·Herman PAGE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–1142, 97–CO–246.

· District of Columbia Court of Appeals.

Argued April 14, 1998.

Decided Aug. 6, 1998.

Paul J. Riley, Washington, DC, for appellant.

Patricia A. Heffernan, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, and Thomas R. Eldridge, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, FARRELL, and KING, Associate Judges.

KING, Associate Judge.

Herman Page was convicted following a jury trial of first-degree felony murder (robbery), robbery, second-degree burglary, and two counts of second-degree murder. He appeals from the judgments of conviction (No. 94–CF–1142), and from the denial of a motion to vacate the judgment filed pursuant to D.C.Code § 23–110 (1996 Repl.) (No. 97–CO–246). Although Page raises a number of issues in these appeals, only two require discussion because they present issues of first impression. Specifically, Page contends that the trial court erred: (1) by using the same robbery as both the predicate crime for the felony murder charge, and as the aggravating factor in sentencing Page to life without parole; and (2) in ruling that the government's notice of intent to seek a sentence of life without parole met statutory and consti-

tutional requirements.[1] We conclude that there was no error on the part of the trial court, and accordingly affirm both the judgments of conviction and the denial of the motion to vacate. However, we remand the case to the trial court to permit that court to vacate those convictions that merge with other convictions.

## I.

Albert Beverly owned an apartment building and adjacent beauty salon in Southeast Washington. On Saturday, July 3, 1993, Beverly ejected Page from one of the apartments, where he was staying as a guest of tenant Robert Arbuthnot. Beverly had earlier complained to the police that Page was "disorderly" and "didn't belong [there]."

Vincent Kenney testified that he met Page at 8:00 p.m. that evening. According to Kenney, Page was agitated over the fact that Beverly had ejected him and would not let him return to retrieve his belongings. As the two men talked, Page repeatedly ran to a spot from which he could see the open door of the beauty salon and Beverly within. Before parting ways, Page told Kenney that he was "going to get [Beverly] for putting him out" of Arbuthnot's apartment.

Later that evening, Beverly was brutally murdered in the beauty salon. The medical examiner testified that Beverly had been beaten and kicked to death, and that his injuries were of a type and severity normally seen in "high-velocity motor vehicle accidents." The body, when discovered, lay in a large pool of dried blood, and large blood spatters were found on the wall behind the body.

Kenney testified that he saw Page again at 9:45 that night, with "blood all over his clothing and his hands." Page told Kenney that "[h]e beat [Beverly] in the head." Samuel Redman testified that, on the same night, he and Page entered the closed salon at Page's suggestion in search of property they could sell. He testified that upon entering he saw a body on the floor in "a whole lot of blood."

Beverly's body was not discovered until the following Tuesday, July 6. The same day, numerous items from Beverly's salon were found in Robert Arbuthnot's apartment—a television, a space heater, two hairdryers, and a drawer containing combs and brushes. Police also found a rent check from hairstylist Annie Mae Gerald made out to Beverly, and Beverly's keys and identification card. Ms. Gerald had left the rent check in an agreed-upon hiding place, under some jars in a drawer in the salon, before she left the salon the previous Saturday. Page's fingerprints were found on all these items, and at the crime scene.

Following a jury trial, Page was convicted of first-degree murder/felony murder (robbery), second-degree burglary, robbery, and two counts of second-degree murder.[2] Page

---

1. Page's other contentions can be dealt with summarily. First, we reject his argument that the government presented insufficient evidence to support the burglary and felony murder (robbery) convictions. There was sufficient evidence from which the jury could infer Page's intent at the time of entry, *see Lee v. United States*, 699 A.2d 373, 383–84 (D.C.1997), and also infer that the robbery and the murder were part of one "continuous chain of events." *Id.* 699 A.2d at 384–86. Second, Page has not shown that the lack of a particularized unanimity jury instruction, such that the jury would be required to find that Page killed Beverly on either one of two separate occasions, jeopardized the fairness and integrity of the trial. *See McKinnon v. United States*, 644 A.2d 438, 441 n. 6 (D.C.), *cert. denied*, 513 U.S. 1005, 115 S.Ct. 523, 130 L.Ed.2d 428 (1994). Third, Page has not shown that his counsel's performance was deficient or that it prejudiced his defense. *See Smith v. United States*, 686 A.2d 537, 546–47 (D.C.1996), *cert.*

*denied,* — U.S. —, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997). Finally, the trial court did not abuse its discretion in denying Page's motion under D.C.Code § 23–110 without having held a hearing. *See Minor v. United States*, 647 A.2d 770, 776 (D.C.1994), *cert. denied*, 516 U.S. 935, 116 S.Ct. 347, 133 L.Ed.2d 244 (1995).

2. First-degree murder/felony murder, in violation of D.C.Code § 22–2401 (1998 Supp.); robbery, in violation of D.C.Code § 22–2901 (1996 Repl.); second-degree burglary, in violation of D.C.Code § 22–1801(b) (1996 Repl.). Page was also charged with, but acquitted of, one count of first-degree premeditated murder and one count of first-degree/purposeful felony murder (second-degree burglary), also in violation of D.C.Code § 22–2401. Page's convictions on two counts of second-degree murder were as lesser included offenses of first-degree premeditated murder and first-degree/purposeful felony murder.

was given consecutive sentences of life imprisonment without possibility of parole ("LWOP") for the felony murder conviction, and five to fifteen years imprisonment for the second-degree burglary conviction, to be served concurrently with sentences of five to fifteen years for the robbery conviction, and two terms of fifteen years to life for the two second-degree murder convictions.

## II.

■ Page contends that the robbery, which was an element of felony murder, cannot also be used as the aggravating factor to raise his sentence to life imprisonment without parole under D.C.Code §§ 22–2404(a) and 22–2404.1 (1996 Repl. & 1998 Supp.). Page argues that using the robbery offense for both purposes amounts to "double counting" which violates the eighth and fourteenth amendments, because "a trial court could find that every [felony murder] would fit the definition under § 22–2404.1(b)(8), and the code fails to create any restraint on the arbitrary and capricious infliction of the LWOP provision."

First-degree/felony murder (robbery), as defined in D.C.Code § 22–2401, occurs when the accused "without purpose so to do kills another in perpetrating or in attempting to perpetrate ... [a] robbery." Under D.C.Code § 22–2404(a), the punishment for first-degree murder is life imprisonment, "except that the court may impose a punishment of life imprisonment without parole in accordance with § 22–2404.1." D.C.Code § 22–2404.1 provides that:

(a) If a defendant is convicted of murder in the first degree, and if the prosecution has given the notice required under § 22–2404(a), a separate sentencing procedure shall be conducted as soon as practicable after the trial has been completed to determine whether to impose a sentence of life imprisonment or life imprisonment without possibility of parole.

(b) In determining the sentence, the court shall consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist: ...

(8) The murder was committed while committing or attempting to commit a robbery

. . . .

The presence of an aggravating factor allows the court to impose, in its discretion, a sentence of life without the possibility of parole.

Page has cited no binding authority holding that the same felony may not be used both as the predicate offense for the felony murder charge, and as the aggravating factor in imposing life without parole under § 22–2404.1. Instead, he relies upon *Henson v. United States*, 399 A.2d 16 (D.C.), *cert. denied*, 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979), where this court sought to determine "whether Congress intended to permit a single prior felony conviction to do double duty," by both raising a gun possession offense to felony status and serving as one of two prior felonies required to impose an enhanced sentence of life for the same offense. *Henson, supra*, 399 A.2d at 21. We held that such double counting was impermissible because the statutory provisions were ambiguous on that point, and we could discern no basis for concluding that the legislature intended that the same felony could be used for both purposes. *Henson* is inapposite in these circumstances, however, because there is no ambiguity regarding what was intended by the statutory provision applicable here; § 22–2404.1 clearly and unequivocally sets forth the aggravating circumstances that allow the court to consider an enhanced sentence for first-degree murder, including the commission of a robbery.[3]

3. Page also directs us to *State v. Cherry*, 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980), in which the North Carolina Supreme Court interpreted the North Carolina death penalty statute to disallow submission of the underlying felony to the jury as an aggravating circumstance in the sentencing phase when it was the basis for a felony murder conviction. The *Cherry* court was troubled by the potential for unequal treatment in the fact that evidence of premeditation and

deliberation was not also a statutory aggravating factor, *see id.* 257 S.E.2d at 568—unlike the District's statute, which permits a LWOP sentence based on the fact, for example, that the murder "was a drive-by or random shooting," D.C.Code § 22–2404.1(b)(5), or was "committed after substantial planning." D.C.Code § 22–2404.1(b)(11). Even if *Cherry* were not distinguishable, however, we would choose not to follow it particularly in light of the Supreme

Page also relies upon an Eighth Circuit case, *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.1985), which addresses the use of aggravating factors that allow imposition of the death penalty for a murder conviction. *Collins,* however, was later overruled[4] based upon the Supreme Court's holding in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In *Lowenfield,* the Court affirmed petitioner's death sentence, based upon the jury's finding of an aggravating factor. The Court observed: "To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield, supra,* 484 U.S. at 244, 108 S.Ct. at 554 (quoting *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). The Court held that

> the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm. There is no question but that the [statutory] scheme narrows the class of death-eligible murderers and then at the sentencing phase allows for the consideration of mitigating circumstances and the exercise of discretion. The Constitution requires no more.

*Id.* 484 U.S. at 246, 108 S.Ct. at 555.

As with the statutes under review in *Lowenfield,* the District's sentencing scheme, as embodied in §§ 22–2404 and 22–2404.1, narrows the class of murderers eligible for the District's ultimate sentence—life without parole—to those convicted of first-degree mur-

der. The statutes allow the trial judge to consider the presence of aggravating factors and mitigating circumstances, and to exercise discretion in imposing the LWOP sentence.[5] For Page, the commission of the robbery in addition to the murder "reasonably justif[ied] the imposition of a more severe sentence," and the trial court did not err by using the same robbery as the predicate crime for felony murder and as the aggravating circumstance for LWOP sentencing.

### III.

■ Page also contends that the trial court erred in ruling that the government's notice of its intent to seek a life without parole sentence was not defective. He claims further, and for the first time on appeal, that the notice failed to specify which particular aggravating circumstance the government intended to rely upon as the basis for this sentence, and therefore that he was prejudiced in evaluating his pretrial options.

D.C.Code § 22–2404(a) requires that the prosecution "notify the defendant in writing at least 30 days prior to trial that it intends to seek a sentence of life imprisonment without parole as provided in [D.C.Code] § 22–2404.1." In the instant case, the government's notice, filed December 29, 1993, reads:

> The United States ... hereby notifies the defendant and this Court that ... should he be convicted of first degree murder, the United States will seek a sentence of life imprisonment without parole pursuant to 22 D.C.Code 2404(a) ("The First Degree Murder Amendment Act of 1992").

Court's decision in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), discussed *infra. See also Oken v. State,* 343 Md. 256, 681 A.2d 30, 52 (1996) ("A felony may serve as both the basis of a felony murder conviction and as an aggravator under the Maryland death penalty statute."); *Stebbing v. State,* 299 Md. 331, 473 A.2d 903, 916–17 (1984) (declining to follow *Cherry* ).

4. *Collins v. Lockhart,* 754 F.2d 258 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985), *overruled by Perry v. Lockhart,* 871 F.2d 1384, 1393 (8th Cir.) (overruling in light of *Lowenfield, supra* ), *cert. denied,* 493 U.S. 959, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989).

5. Moreover, the imposition of the LWOP sentence in this case was anything but "arbitrary and capricious." The trial judge conducted the required separate sentencing hearing for the felony murder conviction on September 15, 1994. He found not only that the government had proven beyond a reasonable doubt the aggravating circumstance of the murder having been committed during the commission of the robbery, but also that the murder of Beverly "was especially heinous, atrocious and cruel," another aggravating circumstance permitting the imposition of a LWOP sentence under § 22–2404.1(b)(4). The trial court, however, did not base the LWOP sentence on this latter factor.

Page does not dispute that the notice was timely. However, he argues that this notice was defective because it did not specifically cite to § 22–2404.1, or state a particular aggravating circumstance.

We have noted, in the context of enhanced sentence based on prior convictions, that "[t]he purpose of the statute is (1) to give notice to the defendant so that he may reasonably assess whether to plead guilty or proceed to trial, and (2) to avoid the 'unfairness' of increasing the potential punishment after the trial has begun." *Parker v. United States,* 654 A.2d 867, 870–71 (D.C.1995) (citing *Arnold v. United States,* 443 A.2d 1318, 1327–28 (D.C.1982)). The notice given Page by the government met these requirements, and we can discern no basis for applying a different rule to the notice requirement in § 22–2404(a).

The notice advised Page that, if he was convicted of first-degree murder, the government intended to seek life without parole pursuant to § 22–2404(a), which explicitly references § 22–2404.1. The notice was filed three months before the start of Page's first trial (which ended in a mistrial) and six months before the start of his second trial. There is no requirement in either § 22–2404(a) or § 22–2404.1, or in any other statutory provision, that the notice set forth the specific aggravating factor or factors that the government intends to rely upon as the basis for a LWOP sentence. Moreover, we are aware of no authority requiring such specificity in the notice. Finally, Page has not shown that this so-called "defect" affected his pretrial decision-making or prejudiced his case in any way. Page had more than adequate notice of the government's intentions so that he could fully and reasonably assess his options.

## IV.

In sum, we reject all of Page's contentions, and affirm the convictions and the order

denying the motion to vacate. Because some of the convictions merge with the first-degree murder conviction, however, we remand to the trial court to vacate those convictions.[6]

*So ordered.*

---

6. As we have suggested in these circumstances, the trial court sentenced Page on all counts on which he was convicted, without regard to the possible merger of some of the offenses. *Garris v. United States,* 491 A.2d 511, 514–15 (D.C. 1985). We agree with Page and the government, however, that some of the convictions merge and, therefore, should be vacated. Specifically, the robbery conviction merges with the conviction for felony murder, *Lee, supra* note 1, 699 A.2d at 382 (citing *Catlett v. United States,* 545 A.2d 1202, 1219 (D.C.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989)); and the two convictions for second-degree murder also merge with the felony murder conviction. *Id.* 699 A.2d at 382–83 (citing *Byrd v. United States,* 510 A.2d 1035, 1036–37 (D.C.1986) (en banc)).