**Ex Parte Patrick ERVIN, Appellant,**

v.

**The STATE of Texas**

**No. 73,137.**

Court of Criminal Appeals of Texas.

Jan. 13, 1999.

Rehearing Denied March 17, 1999.

Patrick Ervin, Huntsville, pro se.

Ronnie Earle, Dist. Atty., Matthew Paul, State's Atty., Austin, for the State.

### OPINION

KELLER, J., delivered the opinion of the Court in which McCORMICK, P.J., and PRICE, HOLLAND, WOMACK, and KEASLER, JJ., joined.

Pursuant to a plea agreement, applicant was convicted of intoxication manslaughter (Count I) and manslaughter (Count II) arising out of a traffic accident involving a single victim occurring on July 12, 1995. The trial court sentenced him to 25 years for each offense and ordered the sentences

to run concurrently. In a pro se application for writ of habeas corpus, applicant complains that permitting both convictions for this single instance of conduct violates the Fifth Amendment's protection against double jeopardy.[1] We agree.

## I. The problem

Applicant was convicted under two closely-related homicide statutes that are not the "same" offense under a strict application of the same elements test announced by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Supreme Court stated:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. 180. A person commits manslaughter if he recklessly causes the death of an individual. Texas Penal Code § 19.04(a).[2] A person commits intoxication manslaughter (to the extent relevant here) if he operates a motor vehicle in a public place, is intoxicated, and by reason of that intoxication causes the death of another by accident or mistake. § 49.08. Manslaughter requires "recklessness," which is not required for intoxication manslaughter. Intoxication manslaughter requires "intoxication" and "the operation of a motor vehicle in a public place," neither of which are required for manslaughter. If the *Blockburger* test is the sole test for double jeopardy, then the State may obtain convictions under both provisions even though there is only one transaction and one victim.

The question we confront today is whether these two offenses should nevertheless be considered the same for double jeopardy purposes. That inquiry requires us to determine whether the *Blockburger* test is in fact the only test for double jeopardy, and, if it is not the only test, whether the offenses in question are the "same" under applicable double jeopardy principles.

## II. The trial court's conclusion

In the present habeas corpus proceeding, the trial court issued findings of fact and conclusions of law. Based upon our opinion in *Ex Parte Peterson*, 738 S.W.2d 688 (Tex.Crim.App.1987), the trial court concluded that convictions for both offenses constituted double jeopardy. The trial court's reliance upon *Peterson*, however, is misplaced. *Peterson* involved a multiple-prosecutions double jeopardy claim: the defendant had previously been convicted of driving while intoxicated (DWI) and faced a subsequent prosecution for involuntary manslaughter. *Id.* Relying upon *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), we held that the second prosecution violated the Double Jeopardy Clause because the prosecution would rely upon conduct involving the DWI conviction to show involuntary manslaughter. *Peterson*, 738 S.W.2d at 691. *Peterson* did not address the application of double jeopardy principles to multiple offenses prosecuted in the same trial. Moreover, the "same-conduct" rule was subsequently repudiated by the Supreme Court. *United States v. Dixon*, 509 U.S. 688, 704–708, 113 S.Ct. 2849, 125 L.Ed.2d 556 (Opinion of Scalia, J.); *Id.* at 713–714, 113 S.Ct. 2849 (Opinion of Rehnquist, C.J.).[3]

---

1. The Fifth Amendment states in relevant part: "... nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ..." (ellipses inserted).

2. All further references to sections are to the Texas Penal Code unless otherwise provided.

3. Whether *Peterson* retains any vitality is an open question. *But see State v. Perez*, 947 S.W.2d 268 (Tex.Crim.App.1997)(indicating that *Blockburger* test should focus on elements of the offense as alleged in the indictment rather than as alleged in the statutory provisions).

### III. Supreme Court's view of multiple punishments

██ When multiple offenses are prosecuted at a single trial, the Double Jeopardy Clause "prevent[s] the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). A defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended. *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). In the multiple punishments context, the *Blockburger* test is simply a rule of statutory construction, which is useful in attempting to ascertain legislative intent. *Hunter*, 459 U.S. at 366–368, 103 S.Ct. 673. Hence, the Supreme Court has concluded that the *Blockburger* test cannot negate a clearly expressed legislative intent to impose multiple punishments. *Id.* at 368, 103 S.Ct. 673.

██ The *Blockburger* test's status as a "mere rule of statutory construction" raises an inverse conclusion as well: the *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one. And, that status raises the possibility that there exist other rules of statutory construction that may be employed to help ascertain whether a legislature intended multiple punishments.

### IV. Other jurisdictions

Whether homicide offenses that are distinct under *Blockburger* may nevertheless be considered the "same" for purposes of the "multiple punishments" aspect of the Double Jeopardy Clause is an issue of first impression in Texas. Because the issue is of federal constitutional dimension, other jurisdictions may have useful insights into the matter. Hence, we will examine the cases in other jurisdictions for assistance in resolving the issue before us.

### A. Murder variations

The issue appears to arise most often in the context of murder prosecutions. The most common manifestation of this issue is in a prosecution for both felony murder and a murder offense that contains a culpable mental state, for example, the culpable mental state of "intentionally." [4] The offenses are distinct under *Blockburger* because felony murder requires proof of a felony, which intentional murder does not, and intentional murder requires proof of the culpable mental state of "intentionally," which felony murder does not. Murder variations can also include differing versions of capital murder or of felony murder. For example, a defendant might be prosecuted for murder of a person in the course of rape and also for murder of the same person in the course of robbery (both are ordinarily capital murders if the killing was intentional and felony murders if the killing was an accident). The rape and robbery elements differentiate the two capital murder (or felony murder) offenses under *Blockburger*. Typically, the murder variations involved are found in the same statutory section under different subsections.

### 1. The prevailing view

Despite the apparent divergence of elements under *Blockburger*, a decisive majority of jurisdictions that have addressed the issue have held that a trial court cannot impose multiple convictions and sentences for variations of murder when only one person was killed: Alaska, *Gray v. State*, 463 P.2d 897, 911 (Alaska 1970)(premeditated murder and felony murder); Arizona, *State v. Arnett*, 158 Ariz. 15, 760 P.2d 1064, 1068–1069 (Ariz.1988)(same); Colorado, *People v. Lowe*, 660 P.2d 1261, 1269–1271 (Colo.1983)(murder after deliberation and felony murder) and *People v.*

---

4. Other common culpable mental states are knowledge, premeditation, and depraved indifference. We shall use the intentional mental state in this discussion for purposes of illustration.

*Rodriguez,* 914 P.2d 230, 284 (Colo.1996)(reaffirming *Lowe*); Connecticut, *State v. Chicano,* 216 Conn. 699, 584 A.2d 425, 429–431 (1990), *cert. denied,* 501 U.S. 1254, 111 S.Ct. 2898, 115 L.Ed.2d 1062 (1991)(felony murder and first degree manslaughter as a lesser included offense of intentional murder) and *State v. Lewis,* 245 Conn. 779, 717 A.2d 1140, 1160–1161 (1998)(murder and felony murder; reaffirming *Chicano);* Florida, *Gaskin v. State,* 591 So.2d 917, 920 (Fla.1991), *vacated on other grounds,* 505 U.S. 1244, 113 S.Ct. 22, 120 L.Ed.2d 948 (1992) (premeditated murder and felony murder); Georgia, *Pressley v. State,* 235 Ga. 341, 219 S.E.2d 418 (1975)(malice murder and felony murder) and *Hayes v. State,* 265 Ga. 1, 453 S.E.2d 11, 13 (1995)(same); Indiana, *Martinez Chavez v. State,* 534 N.E.2d 731, 739 (Ind.1989)(murder and felony murder) and *Kennedy v. State,* 674 N.E.2d 966, 967 (Ind.1996)(reaffirming *Martinez Chavez*); Illinois, *People v. Pitsonbarger,* 142 Ill.2d 353, 154 Ill.Dec. 562, 568 N.E.2d 783, 792–793 (1990), *cert denied,* 502 U.S. 871, 112 S.Ct. 204, 116 L.Ed.2d 163 (1991)(knowing murder and felony murder) and *People v. Oaks,* 169 Ill.2d 409, 215 Ill.Dec. 188, 662 N.E.2d 1328, 1356 , *cert. denied,* 519 U.S. 873, 117 S.Ct. 191, 136 L.Ed.2d 129 (1996)(reaffirming *Pitsonbarger*); Iowa, *State v. Gilroy,* 199 N.W.2d 63, 68 (Iowa 1972)(premeditated murder and murder in perpetration of robbery); Kansas, *State v. Sullivan,* 224 Kan. 110, 578 P.2d 1108, 1111–1112 (1978)(premeditated murder and felony murder) and *State v. Thompkins,* 263 Kan. 602, 952 P.2d 1332, 1340 (1998)(reaffirming a previous case articu-

lating the principle found in *Sullivan* ); Maine, *State v. Dechaine,* 572 A.2d 130, 136 (Me.1990)(intentional or knowing murder and depraved indifference murder)[5] and *State v. Oeur,* 711 A.2d 118, 119 n. 2 (Me.1998)(reaffirming *Dechaine* and extending it to multiple theories of aggravated assault); Maryland, *Wooten–Bey v. State,* 308 Md. 534, 520 A.2d 1090, 1092(Md.), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 853 (1987)(premeditated murder and felony murder) and *Burroughs v. State,* 88 Md.App. 229, 594 A.2d 625, 633 (1991)(same); Michigan, *People v. Densmore,* 87 Mich.App. 434, 274 N.W.2d 811, 814 (1978)(same) and *People v. Bigelow,* 225 Mich.App. 806, 571 N.W.2d 520, 520 (1997), *affirmed,* 229 Mich.App. 218, 581 N.W.2d 744 (1998)(reaffirming *Densmore* ); Minnesota, *State v. LaTourelle,* 343 N.W.2d 277, 284 (Minn.1984)(premeditated murder and felony murder) and *State v. Grayson,* 546 N.W.2d 731, 739 (Minn.1996)(two variations of murder); Nebraska, *State v. White,* 254 Neb. 566, 577 N.W.2d 741, 746–748 (1998)(premeditated murder and felony murder)[6]; New Jersey, *State v. Watson,* 261 N.J.Super. 169, 618 A.2d 367, 373 (1992), *cert. denied,* 133 N.J. 441, 627 A.2d 1145 (1993)(purposeful and knowing murder and felony murder); New Mexico, *State v. Landgraf,* 121 N.M. 445, 913 P.2d 252, 261–262 (1996)(vehicular homicide [due to intoxication] and evading/eluding a police officer resulting in death)[7]; North Carolina, *State v. Wilson,* 345 N.C. 119, 478 S.E.2d 507, 510 (1996)(premeditated murder and felony murder); Ohio, *State v. Huertas,* 51 Ohio St.3d 22, 553 N.E.2d 1058, 1066

**5.** We note that the Maine Court held that these crimes did "not involve a lesser included offense" but were "alternative theories of criminal responsibility." *Id.*

**6.** The Nebraska case addressed a multiple prosecutions double jeopardy issue—initial prosecution and acquittal of premeditated murder (conviction on lesser included offense) followed by a subsequent prosecution for felony murder. *Id.* at 743. However, in reaching its holding, the Court relied upon a multiple punishments analysis. *Id.* at 747.

**7.** The New Mexico court addressed a single statute concerning vehicular homicide which contained alternative formulations of vehicular homicide that were charged. *Landgraf,* 913 P.2d at 252. The Court relied upon Colorado Supreme Court's opinion in *Lowe* for its conclusions. *Landgraf,* 913 P.2d at 262. Hence *Landgraf,* while not involving variations of murder, involves the same type of problem considered in the murder variations cases and in fact relies upon those cases in reaching its decision.

(1990)(aggravated murder with prior calculation and design and aggravated murder in the course of aggravated burglary) and *State v. Moore,* 81 Ohio St.3d 22, 689 N.E.2d 1, 17 (1998)(reaffirming *Huertas* ); South Dakota, *State v. White,* 549 N.W.2d 676, 682 (S.D.1996)(premeditated murder and felony murder); Tennessee, *State v. Hurley,* 876 S.W.2d 57, 69–70 (Tenn.1993), *cert. denied,* 513 U.S. 933, 115 S.Ct. 328, 130 L.Ed.2d 287 (1994)(same); Virginia, *Clagett v. Commonwealth,* 252 Va. 79, 472 S.E.2d 263, 273 (1996), *cert denied,* 519 U.S. 1122, 117 S.Ct. 972, 136 L.Ed.2d 856(1997)(4 deaths, 5 convictions: 4 capital murder convictions based upon murder in the course of robbery, one capital murder conviction for murder of multiple persons; "multiple murder" capital murder conviction vacated); District of Columbia, *Byrd v. United States,* 510 A.2d 1035, 1036–1037 (D.C.App.1986, en banc)(premeditated murder and felony murder) and *Page v. United States,* 715 A.2d 890, 894 and 894 n. 6 (D.C.1998)(reaffirming *Byrd* ).

Many of these jurisdictions have expressly characterized punishment for two or more murder variations for a single death as a double jeopardy violation. *Arnett,* 760 P.2d at 1068; *Chicano,* 584 A.2d at 431; *Dechaine,* 572 A.2d at 136; *Wooten–Bey,* 520 A.2d at 1092; *Densmore,* 274 N.W.2d at 814 and *Bigelow,* 571 N.W.2d at 520; *White,* 577 N.W.2d at 748; *Landgraf,* 913 P.2d at 261–262; *Clagett,* 472 S.E.2d at 273; *Byrd v. United States,* 500 A.2d 1376, 1382–1387 (D.C.App.1985, panel opinion), *affirmed and adopted,* 510 A.2d 1035 (D.C.App.1986, en banc). Several other jurisdictions, while not expressly characterizing the issue as one of double jeopardy, have held that such multiple murder convictions constitute "double punishment." *Thompkins v. State,* 270 Ind. 163, 383 N.E.2d 347, 352 (1978); *Gilroy,* 199 N.W.2d at 68; *Thompkins,* 952 P.2d at 1340. Other jurisdictions have simply held that the offenses "merge." *Hayes,* 453 S.E.2d at 13; *Oeur,* 711 A.2d at 119 n. 2; *Watson,* 618 A.2d at 373; *Moore,* 689

N.E.2d at 17. Colorado holds that multiple convictions under this situation is prevented by the "rule of lenity." *Lowe,* 660 P.2d at 1267–1268; *see also Landgraf,* 913 P.2d at 261 (New Mexico appellate court holding that the "rule of lenity" is a tool of double jeopardy analysis). The remaining jurisdictions have simply given reasons for refusing to permit multiple convictions (see below). As will be seen in further discussion, most, if not all, of the reasons given by various jurisdictions appear to invoke double jeopardy principles.

In finding multiple convictions improper, many jurisdictions have held that murder is one crime with multiple theories of liability. *Gray,* 463 P.2d at 911; *Arnett,* 760 P.2d at 1068–1069; *Lowe,* 660 P.2d at 1271; *Oeur,* 711 A.2d at 119 n. 2 (citing *Dechaine* ); *Wooten–Bey,* 520 A.2d at 1091–1092; *White,* 577 N.W.2d at 747; *White,* 549 N.W.2d at 682; *Byrd,* 500 A.2d at 1384–1385. Others have simply noted that there can be only one murder where only one victim has died. *Martinez Chavez,* 534 N.E.2d at 739; *Oaks,* 215 Ill.Dec. 188, 662 N.E.2d at 1328 and *Pitsonbarger,* 154 Ill.Dec. 562, 568 N.E.2d at 792; *Densmore,* 274 N.W.2d at 814; *Hurley,* 876 S.W.2d at 70. Several jurisdictions have gone further, holding that their legislatures did not intend to impose multiple convictions for a single *homicide.* *Chicano,* 584 A.2d at 431; *Gaskin,* 591 So.2d at 920 (citing *Houser v. State,* 474 So.2d 1193 (Fla. 1985)); *White,* 549 N.W.2d at 682 (citing *Wilcox v. Leapley,* 488 N.W.2d 654 (S.D. 1992)).

The District of Columbia Court of Appeals has held that a double jeopardy analysis may properly take into account whether the offenses are directed at separate evils. *Byrd,* 500 A.2d at 1386. That court concluded that premeditated murder and felony murder were both directed at a common societal interest—the prevention of a homicide. *Id.* at 1386–1387. Similarly, a Maryland court has held that the focus of homicide statutes is on the deaths

of victims rather than theories of liability: "In homicide cases, the units of prosecution are dead bodies, not theories of aggravation." *Burroughs,* 594 A.2d at 633.

Other jurisdictions have simply asserted that variations of murder are the same offense, or a derivative offense, without much elaboration. *Grayson,* 546 N.W.2d at 739 ("a defendant cannot be convicted twice for the same offense against the same victim on the basis of the same act" (internal quotation marks and citation omitted)); *Wilson,* 478 S.E.2d at 510 ("We acknowledge that defendant can only be punished once for each of the first-degree murders"); *Clagett,* 472 S.E.2d at 273 ("The conviction for multiple homicide capital murder, although of equal magnitude, is derivative of the other four [capital murder convictions]" (bracketed material inserted)).

Colorado, Nebraska, New Mexico, and the District of Columbia have addressed in detail the question concerning *Blockburger*'s applicability to variations of murder. The Colorado and Nebraska high courts explained that *Blockburger* applies only when one offense merges into another due to identity of elements and that the *Blockburger* test never applied when a person was charged with the same crime committed in alternate ways. *Lowe,* 660 P.2d at 1266–1267; *White,* 577 N.W.2d at 745. Emphasizing language in the *Blockburger* decision itself, the D.C. court argued that the *Blockburger* test applied only when a defendant was charged with violating "*two distinct statutory provisions.*" *Byrd,* 500 A.2d at 1384 (quoting *Blockburger;* emphasis in *Byrd* ). Premeditated murder and felony murder, the court held, were not distinct provisions but were merely separate clauses of the *same* statutory provision. *Id.* Likewise, the Nebraska court articulated that *Blockburger* applied only to different statutes and that the of-

fenses of premeditated murder and felony murder were contained in the same statute. *White,* 577 N.W.2d at 745.

In a later case, Colorado's high court came to similar conclusions regarding the consequences of placing offenses in the same or separate statutes. In *People v. Leske,* 957 P.2d 1030 (Colo.1998), the Supreme Court of Colorado was called upon to address the double jeopardy implications of simultaneous convictions for sexual assault on a child and sexual assault on a child by a person in a position of trust. The court noted that the offenses had different elements under *Blockburger. Leske,* 957 P.2d at 1042.[8] The court distinguished its opinion in *Lowe* by observing that the sexual assault offenses—unlike the murder offenses—were contained in separate statutory sections, and hence, were not merely alternative ways of proving a single offense. *Leske,* 957 P.2d at 1042. The defendant attempted to undermine that observation by pointing to a previous case in which the court held that second degree murder and felony murder were the same offense even though they were contained in different statutory sections. *Id.* The Colorado Supreme Court distinguished the case, however, by explaining that second degree murder was a recognized lesser-included offense of another form of murder that was contained in the same statutory section as felony murder. *Id.*

■ Finally, all four jurisdictions relied upon the Supreme Court's holding in *Hunter* that *Blockburger* is only a rule of statutory construction. *Lowe,* 660 P.2d at 1266; *White,* 577 N.W.2d at 745; ; *Landgraf,* 913 P.2d at 261; *Byrd,* 500 A.2d at 1383. As can be seen from the above discussion, these four jurisdictions have drawn the inverse implication of *Hunter* that we observed earlier: offenses may be

---

8. Sexual assault of a child required proof that the child was under age fifteen and that the actor was at least four years older than the child. Sexual assault of a child in a position of trust did not contain these age elements but merely required proof that the child was under age eighteen. The latter offense also required that the actor be in a position of trust, an element not required by the former offense. *Id.* at 1038.

the same for double jeopardy principles, even if they have different elements under the *Blockburger* test, if there is other indicia of a legislative intent to treat the offenses as the same. *See Landgraf,* 913 P.2d at 261.

Although concluding that *Blockburger* was not controlling, the D.C. court alternatively argued that the *Blockburger* test was satisfied. *Byrd,* 500 A.2d at 1386. In doing so, the court relied upon the history of murder as it developed under the common law. *Id.* at 1385. Murder was traditionally held to contain the element of "malice." *Id.* As the common law developed, the term "malice" came to encompass the several distinct mental states found in current murder statutes, including the commission of a felony in felony murder. *Id.* The D.C. court held that "malice" was an ultimate fact that could be proved in alternate ways, such as premeditation or the commission of a felony, and hence, the various formulations of murder (e.g. premeditated murder and felony murder) did in fact contain the "same" elements. *Id.* The D.C. court's comments concerning "malice" appear to comport with the view of commentators concerning the historical development of the crime of murder. *See* LaFave and Scott, SUBSTANTIVE CRIMINAL LAW, Vol. 2, § 7.1 *Murder,* 183 (1986); Torcia, WHARTON'S CRIMINAL LAW, 14th ed., Vol. 2, § 145 *Felony-murder,* 201 & 204 (1979)(felony murder known "as the doctrine of constructive malice"). Even so, this construction is not an application of *Blockburger* in a strict sense because the elements of the offenses are in fact different.

## 2. The minority view

A minority of jurisdictions have held that different variations of murder can support multiple convictions even though only one person was killed. Alabama, *Ex Parte McWilliams,* 640 So.2d 1015, 1022 & 1022 n. 4 (Ala.1993)(capital murder in the course of robbery and capital murder in the course of rape); Delaware, *Chao v. State,* 604 A.2d 1351, 1360–1361 (Del.1992)(intentional murder and felony murder) and *Steckel v. State,* 711 A.2d 5, 12 (Del.1998)(same); New York, *People v. Leonti,* 18 N.Y.2d 384, 275 N.Y.S.2d 825, 831–832, 222 N.E.2d 591 (Ct.App.1966)(felony murder and second degree murder); Second Circuit, *Knapp v. Leonardo,* 46 F.3d 170, 177–178 (2nd Cir.), *cert. denied,* 515 U.S. 1136, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995)(intentional murder and reckless manslaughter); Sixth Circuit, *Lowther v. Maxwell,* 6 Ohio Misc. 141, 347 F.2d 941, 942 (6th Cir.1965)(premeditated murder and felony murder).

However, of these jurisdictions, only Delaware stands as solid persuasive authority for this proposition. Alabama's Supreme Court has held that robbery-murder and rape-murder are different offenses for double jeopardy purposes because they are distinct under *Blockburger. McWilliams,* 640 So.2d at 1022 n. 4. But, the defendant in that case received only one sentence (a death sentence), and the court pointed to that fact as a distinguishing factor from another double jeopardy case. *Id.* at 1022. New York's highest court has disclaimed that its prior decision in *Leonti* had any double jeopardy implications: "This court, however, has never directly decided whether felony murder and premeditated murder constitute a single offense or multiple offenses for the purposes of double jeopardy. We need not decide that question now...." *People v. Jackson,* 20 N.Y.2d 440, 285 N.Y.S.2d 8, 18–19, 231 N.E.2d 722 (Ct.App.1967)(discussing *Leonti* ). The Sixth Circuit relied upon an Ohio case that is no longer valid precedent in light of the Ohio Supreme Court's more recent line of cases beginning with *Huertas. See Lowther,* 347 F.2d at 942 (relying upon *State v. Ferguson,* 175 Ohio St. 390, 195 N.E.2d 794 (1964)). Finally, the Second Circuit's holding that intentional murder and reckless manslaughter are different offenses simply because they contain different mental states (intent versus reck-

lessness), *see Knapp,* 46 F.3d at 178, has long been rejected by our Legislature, *see* Texas Code of Criminal Procedure, Article 37.09(3).

Delaware, however, has consistently maintained that intentional murder and felony murder are different offenses. In determining that the offenses are different, the Supreme Court of Delaware relied upon *Blockburger* as the exclusive test. *Chao,* 604 A.2d at 1361. That court also argued that multiple convictions served the legitimate purpose of assuring punishment in the event that one of the multiple convictions was later overturned. *Id.* at 1361–1362 n. 10; *see also Steckel,* 711 A.2d at 12. And, Delaware has extended *Chao* to alternate variations of *felony* murder: finding two felony murder offenses to be different even though they involved the same victim because each involved a different underlying felony. *Johnson v. State,* 709 A.2d 1158, 1159 (Del.1998).

### B. Homicide variations

The double jeopardy implications of homicide variations other than murder are addressed less frequently. A variety of offenses have raised the issue in various jurisdictions although they are usually some form of reckless homicide, vehicular homicide, driving while intoxicated homicide, or homicide arising from a misdemeanor violation, usually involving a motor vehicle. Generally, the offenses are defined in separate statutes and are labeled in accordance with different terminology (as opposed to being labeled with the common term "murder" as intentional murder and felony murder are). Although the trend is less one-sided, the greater number of jurisdictions that have addressed the issue have held that a trial court cannot impose multiple convictions and sentences for variations of homicides when only one person was killed: Florida, *Houser v. State,* 474 So.2d 1193, 1196–1197 (Fla. 1985)(DWI manslaughter and vehicular homicide) and *State v. Chapman,* 625 So.2d 838, 839–840 (Fla.1993)(same);

Indiana, *Dawson v. State,* 612 N.E.2d 580, 585 (Ind.App. 1 Dist.1993) (reckless homicide and DWI homicide) and *Walker v. State,* 582 N.E.2d 877, 881–882 (Ind.App. 3 Dist.1991)(DWI homicide and BAC [breath alcohol content] homicide) and *Drossos v. State,* 442 N.E.2d 1, 6 (Ind.App. 4 Dist.1983)(reckless homicide and DWI homicide); Iowa, *State v. Wissing,* 528 N.W.2d 561, 567 (Iowa 1995)(vehicular homicide and involuntary manslaughter); Maryland, *Loscomb v. State,* 45 Md.App. 598, 416 A.2d 1276, 1285 (1980)(manslaughter by motor vehicle and homicide by motor vehicle while intoxicated).

The Florida court has grounded its holding in the Double Jeopardy Clause. *Houser,* 474 So.2d at 1196–1197. That court remarked that the *Blockburger* test is only a rule of statutory construction which could not contravene the contrary intent of the legislature. *Houser,* 474 So.2d at 1196–1197. Indiana's intermediate appellate courts have split on whether their rule is based upon the Double Jeopardy Clause or state law. *Compare Dawson,* 612 N.E.2d at 585 (state law) *with Walker,* 582 N.E.2d at 881–882 (double jeopardy). The basis for Iowa's rule is unclear but the court cites *Gilroy* as support for its holding, and *Gilroy* 's articulated rationale was that the two sentences constituted "double punishment." *See Wissing,* 528 N.W.2d at 567; *Gilroy,* 199 N.W.2d at 68. Maryland's intermediate appellate court has held that two homicide convictions for one death "amounts to piling punishment upon punishment" and is contrary to "fundamental fairness." *Loscomb,* 416 A.2d at 1285.

Massachusetts appears to take the position that two homicide offenses are the same if they involve the same conduct:

> Although we decline to hold that vehicular homicide is a lesser-included crime of manslaughter, we nonetheless conclude that in the present situation, which in fact did involve operation of a motor vehicle on a public way, the two offenses

are sufficiently closely related so as to preclude punishment on both.

*Commonwealth v. Jones,* 382 Mass. 387, 416 N.E.2d 502, 507 (Mass.1981)(involuntary manslaughter and vehicular homicide). This holding was based upon Massachusetts interpretation of the multiple punishments aspect of the Double Jeopardy Clause. *Jones,* 416 N.E.2d at 508 n. 11. The Massachusetts Supreme Court's holding in *Jones* has been called into question recently at the intermediate appellate level. *Commonwealth v. Arriaga,* 44 Mass. App.Ct. 382, 691 N.E.2d 585, 589, *cert. denied,* 427 Mass. 1105, 695 N.E.2d 668 (1998)(indicating that the conduct test had been abandoned). In a subsequent case, however, the intermediate court chose to distinguish *Jones* rather than disregard it. *Commonwealth v. Katsirubis,* 45 Mass. App.Ct. 132, 696 N.E.2d 147, 151 (1998).

Pennsylvania considers the conduct of the particular crime as part of a relaxed version of the *Blockburger* test. *Commonwealth v. Comer,* 552 Pa. 527, 716 A.2d 593, 598–599 (Pa.1998)(involuntary manslaughter and homicide by vehicle—where both arise from a single automobile accident involving one death); *Commonwealth v. Houtz,* 496 Pa. 345, 437 A.2d 385, 387 (1981)(same).

Three courts in different states have held that multiple convictions can be imposed when a single homicide results in a violation of more than one homicide statute. Michigan, *People v. Price,* 214 Mich. App. 538, 543 N.W.2d 49, 53–54 (Mich.App.1995)(operating motor vehicle under the influence (OUI) causing death and involuntary manslaughter); South Carolina, *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617, 623–624 (1997)(Driving under the influence (DUI) causing death and reckless homicide); Vermont, *State v. Poirier,* 142 Vt. 595, 458 A.2d 1109, 1111 (1983)(DUI fatal and manslaughter).

Although recognizing that a "wooden" application of the *Blockburger* test had been rejected in Michigan, the Michigan Court of Appeals nevertheless found that OUI causing death and involuntary manslaughter were different offenses. The Michigan court so found not only because the offenses contained distinct elements under *Blockburger* but also because the statutes were aimed at "distinct societal norms" (one offense punished grossly negligent conduct while the other punished those who operate vehicles under the influence of alcohol or a controlled substance) and the statutes did not "involve a hierarchy of offenses or a situation where one statute incorporates most of the elements of a base statute and then increases the penalty on the basis of the presence of aggravating conduct." *Price,* 543 N.W.2d at 53.

South Carolina and Vermont found the offenses in their cases to be different based upon a strict application of the *Blockburger* test. *Easler,* 489 S.E.2d at 623–625; *Poirier,* 458 A.2d at 1111.

The Colorado Supreme Court, in an old case, held that involuntary manslaughter and DUI death were separate offenses for double jeopardy purposes under a *Blockburger*-style analysis. *Daniels v. State,* 159 Colo. 190, 411 P.2d 316, 317–318 (1966). However, that holding has been cast into doubt by that court's more recent pronouncement that "[i]t would be a strange system of justice that would permit the defendant to be sentenced to two concurrent life sentences for the killing of one person." *Lowe,* 660 P.2d at 1271 (citing Alaska's *Gray* opinion).

The D.C. Circuit addressed a somewhat singular situation involving convictions within the federal system. The defendant was convicted, for a single killing, of first degree murder while armed under the D.C.Code and of killing in the furtherance of a continuing criminal enterprise under the United States Code. *United States v. Sumler,* 136 F.3d 188, 189–190 (D.C.Cir. 1998). Because citizens of the District of Columbia live under only one sovereign, a person may be tried and convicted in the same prosecution for violations of D.C.

statutes and violations of the United States Code, as both are violations of federal law. *Id.* at 190–191. The D.C. Circuit held that *Blockburger* was the sole test for determining whether a D.C. offense constituted the same offense as a United States Code offense under the Double Jeopardy Clause. *Id.* However, this holding was justified, at least in part, by the District of Columbia's unique status: the "separate sovereignties" doctrine would have exempted the United States code offense from double jeopardy protections (as it relates to state offenses) in any state in the union. *Id.* at 191–2. The D.C. Circuit concluded that "the addition of a more searching examination of legislative intent [than the *Blockburger* test] in the case of District defendants would only heighten the degree of ... disparate treatment." *Sumler,* 136 F.3d at 191 (bracketed material and ellipsis inserted).[9]

Finally, as discussed above, in cases concerning variations of murder, courts in Connecticut, Maryland, and South Dakota have broadly articulated a "one death, one homicide" rule that would appear to extend to any multiple homicide prosecution based upon a single death. *See discussion* in Part IV.A.1. By contrast, Delaware and the Second Circuit would certainly reject such a "one death, one homicide" rule given their reliance upon *Blockburger* as articulating the exclusive test for evaluating double jeopardy claims. *See discussion* in Part IV.A.2.

## V. Evaluation

### A. *Blockburger* is not the only test for multiple punishments

▮ The above discussion leads us to conclude that *Blockburger* is not the sole test for determining whether offenses are the same under the multiple punishments aspect of the Double Jeopardy Clause. The inquiry is whether the Legislature intended to permit multiple punishments.

The *Blockburger* test is a useful tool for ascertaining legislative intent, but it is not the only tool. Other (nonexclusive) considerations relevant to determining whether the Legislature intended multiple punishments are: whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the "same" under an imputed theory of liability which would result in the offenses being considered the same under *Blockburger* (i.e. a liberalized *Blockburger* standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes. Having already determined that manslaughter and intoxication manslaughter contain different elements under *Blockburger,* we turn next to analyze whether other factors nevertheless require us to hold that the offenses are the same for double jeopardy purposes.

### B. Pre–1994 statute

Intoxication manslaughter is in essence a specialized variant of the "misdemeanor-manslaughter" doctrine, the misdemeanor analogue of the felony-murder doctrine. *See* WHARTON'S, Vol. II, § 167 *Unlawful Act,* 266; SUBSTANTIVE CRIMINAL LAW, Vol. 2, § 7.13(a), 288. Driving while intoxicated serves as the predicate misdemeanor that enhances a non-reckless death to manslaughter in the very same way that various felonies serve as predicates to enhance an unintentional death to murder.

---

**9.** The D.C. Circuit followed the District of Columbia Court of Appeals' holding that the trial court was not permitted to impose two first degree murder convictions under the D.C. code for the same killing. *Sumler,* 136 F.3d at 189 n. 1.

Before September 1, 1994, manslaughter and intoxication manslaughter were merely alternate methods of committing the offense of involuntary manslaughter under former § 19.05. *See* § 19.05(a)(1) & (2)(1993). The statute had existed in this form since the enactment of the 1973 Penal Code. Under the pre–1994 statute, intoxication manslaughter was a variant of the offense of involuntary manslaughter in the exact same way that felony murder is a variant of murder.

We agree with the vast majority of jurisdictions holding that variants of murder contained within the same statutory section are the same offense for double jeopardy purposes when the same victim is involved. That intentional murder and felony murder are contained within the same section, are phrased as alternative means of committing an offense, are considered forms of "murder," and carry the same punishment ranges are strong indications that the legislature intended the offenses to be the same for double jeopardy purposes. And, under that reasoning, we must necessarily find that intoxication manslaughter and reckless manslaughter under the pre–1994 involuntary manslaughter statute constituted the same offense. They were contained within the same statutory section entitled "involuntary manslaughter," were alleged as alternative means of committing an offense, and carried the same punishment ranges.

The only potential indications to the contrary are found in former § 19.01, entitled, "Types of Criminal Homicide":

(a) A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence causes the death of an individual.

(b) Criminal homicide is murder, capital murder, voluntary manslaughter, involuntary manslaughter, or criminally negligent homicide.

§ 19.01 (1993). Former § 19.05(a)(2)(intoxication manslaughter) does not contain any of the culpable mental states outlined in § 19.01(a). But the same point could be made about "serious bodily injury" murder under § 19.02(a)(2)(1993) and felony murder under § 19.02(a)(3)(1993). And, the intoxication manslaughter offense did fall within the categories contained in § 19.01(b). In fact, the wording of § 19.01(a) may be an indication that the three nonconforming offenses were considered to have the listed culpable mental states by imputation: that is, that felony status and the "intent to cause serious bodily injury" were imputed forms of the culpable mental state of intent (to cause death) and that intoxication was an imputed form recklessness. That conclusion would support a finding of the same offense under a liberalized version of the *Blockburger* test that utilizes imputed elements.

### C. Post–1994 statutes

However, effective September 1, 1994, the Texas Legislature moved the intoxication manslaughter portion of the involuntary manslaughter statute to a new section of the code consisting of intoxication offenses. The question then becomes: did this move by the Legislature change intoxication manslaughter into an entirely different offense for double jeopardy purposes?

The 1994 law lifted the provision relating to intoxication manslaughter, without change,[10] from former § 19.05 to present § 49.08. The penalty ranges for both manslaughter, in new § 19.04, and intoxication manslaughter, in new § 49.08, were raised from third degree to second degree. *See* § 19.05(b)(1993); § 19.04(b)(1995); § 49.08(b)(1995). § 49.08 is entitled "Intoxication Manslaughter." § 19.01(b) was changed to delete references to "voluntary" and "involuntary" in accordance with

10. § 49.08 did add the language "in a public place," but we had already held such language to be implied under the old statute.

*Williams v. State,* 725 S.W.2d 258, 261 (Tex. Crim.App.1987).

the legislature's change in the title of former § 19.05 from "involuntary manslaughter" to current § 19.04's title "manslaughter."[11]

We cannot conclude that the Legislature intended to create separate offenses for double jeopardy purposes merely by moving the provision. The elements of the offense were not changed, the offense still carries within its title "manslaughter," and the punishment ranges for both versions of manslaughter remain identical. Intoxication manslaughter would appear to have dropped completely outside the coverage of § 19.01, but that statute appears to have inaccurately characterized the full range of homicides before the change. And, intoxication manslaughter could still be viewed as having the element of recklessness by imputation, which would make the offenses the same under the liberalized, "imputation" version of the *Blockburger* test.

In addition, at least one plausible explanation exists for moving the intoxication manslaughter offense that does not require us to conclude that multiple punishments were intended. The Legislature apparently consolidated all intoxication offenses under a single, newly enacted chapter of the Penal Code. That chapter contains definitions that are relevant to defining intoxication manslaughter, as well as other intoxication offenses. *See* § 49.01. Hence, the Legislature's transplantation of the intoxication manslaughter offense could be explained as a mere housekeeping measure.

Finally, manslaughter and intoxication manslaughter have a common focus: the death of an individual. Both crimes are result of conduct crimes with death being the result. Because a person can die only once, two result-of-conduct homicide offenses involving the same victim must *necessarily* involve the same result. Given that the result is the focus of these offenses, the sameness of the result is some

indication that the Legislature did not intend to impose multiple punishments. And this sameness of result is an inherent characteristic of homicide offenses that does not depend upon the development of evidence at trial.

### D. Post–1995 statutes

Effective September 1, 1995, the Legislature passed two amendments to the Penal Code relevant to the offense of intoxication manslaughter. § 3.03 was amended to permit consecutive sentences for more than one intoxication manslaughter arising from the same criminal episode. § 3.03(b)(1) & (2)(1996). And, § 49.09 was amended to include intoxication manslaughter in the list of offenses that could be used for enhancement purposes in a later prosecution for driving, flying, or boating while intoxicated. § 49.09(c)(1)(B), (2)(B), & (3)(B)(1996).

■ These changes in the law occurred after the incident serving as the basis for applicant's convictions. Although we have held that subsequent enactments by the Legislature may be some evidence of their intent in a prior version of the statute, we nevertheless give little weight to those subsequent enactments in interpreting the prior law. *Compare Brown v. State*, 943 S.W.2d 35, 40 (Tex.Crim.App.1997)(finding later version of statute relevant to interpreting earlier version, combined with a number of other factors) *with Ex Parte Schroeter*, 958 S.W.2d 811, 813 (Tex.Crim. App.1997) (rejecting Legislature's attempt to interpret prior law in subsequent legislation).

■ More to the point, any link between the September 1995 amendments and a legislative intent to impose multiple punishments is, at best, tenuous. The statute still does not permit consecutive sentencing for other crimes even if they arise out of the same episode as an intoxication

---

**11.** Former § 19.04, "Voluntary manslaughter," was changed into a punishment issue

and moved into § 19.02.

manslaughter. Multiple intoxication manslaughters would necessarily involve multiple victims, unlike the present case. The amendment of § 3.03 demonstrates that the gravamen of the offense of intoxication manslaughter is the death of an individual—a position in keeping with a view of intoxication manslaughter as a type of homicide rather than as a type of intoxication.

As for the 1995 amendments to the enhancement statute, those amendments not only authorize the use of offenses under § 49.08 for enhancement, but also authorize the use of offenses under the old § 19.05(a)(2) for that purpose. *See* § 49.09(c)(1)(E), (2)(D), & (3)(D). Because those amendments permit the use of manslaughter by intoxication offenses that were committed before that offense was moved to chapter 49, the amendments cannot be said to mark intoxication manslaughter as becoming a separate offense after the move. Moreover, that an offense might conceivably be used for enhancement in a future prosecution is a very speculative basis for concluding that the offense is a different one for double jeopardy purposes.

### E. Conclusion

 From the above discussion, we conclude that manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the same victim, and imposing convictions for both in this situation violates the Double Jeopardy Clause. A double jeopardy violation occurs even when, as in this case, the sentences are concurrent. *Ball v. United States,* 470 U.S. 856, 864–865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

 Although the present case involves a plea agreement, the State does not request that the guilty plea be set aside, nor does the State request that we try to effectuate the agreement by reforming one of the convictions to a lesser-included offense that would not be considered the "same" offense. Instead the State has suggested in its answer that we vacate the first conviction, which is manslaughter. We have implied that the State may be able to waive an illegal portion of a judgment and maintain the remainder of the plea agreement. *Ex Parte McJunkins,* 954 S.W.2d 39, 39–40 (Tex.Crim.App. 1997). We expressly hold that today and find that the State has done so in this case. As a result, we grant applicant relief and direct the trial court to vacate the manslaughter conviction while retaining the conviction for intoxication manslaughter.

MEYERS, J., filed a dissenting opinion in which MANSFIELD and JOHNSON, JJ., joined.

Dissenting opinion delivered by MEYERS, J., joined by MANSFIELD and JOHNSON, JJ.

The majority correctly holds the two offenses for which applicant was convicted are the "same" for double jeopardy purposes. I join this holding as well as the reasoning in support of it.

But the majority's remedy of vacating the manslaughter conviction while retaining the intoxication manslaughter conviction does not redress the fact that the double jeopardy violation was an integral part of a plea bargain. Applicant plead guilty to both offenses in exchange for two twenty-five year sentences. Since the two offenses are the "same", as explained in the majority's opinion, applicant's plea to both led to a double jeopardy violation, rendering the plea bargain unenforceable. When a provision of a plea bargain becomes unenforceable, the plea is considered involuntary. *Ex parte Austin,* 746 S.W.2d 226, 227 (Tex.Crim.App.1988); *Shannon v. State,* 708 S.W.2d 850, 852 (Tex.Crim.App.1986); *Ex Parte Huerta,* 692 S.W.2d 681 (Tex.Crim.App.1985); *Ex parte Reyna,* 707 S.W.2d 110, 111 (Tex. Crim.App.1986). The appropriate remedy in these circumstances is withdrawal of the plea and return of the parties to their respective positions prior to the plea.

*Heath v. State,* 817 S.W.2d 335, 337 & 340 (Tex.Crim.App.1991); *Shannon,* supra. These authorities have not been overruled.[1]

The judgment and sentence of the trial court in each cause should be set aside and applicant ordered released to the custody of the Sheriff of Travis County. I dissent to the majority's direction to the trial court to vacate the manslaughter conviction and retain the manslaughter intoxication conviction.

---

1. *Ex parte McJunkins,* 954 S.W.2d 39 (Tex. Crim.App.1997)(op. on reh'g), relied on by the majority, does not apply here. The applicant in that case was specifically found to have affirmatively accepted, as part of his plea bargain, the relinquishment of a statutory provision or right. No such acceptance is shown here. Moreover, in *McJunkins,* both parties agreed upon the remedy. Here, while it is clear that the State would accept the remedy granted by the majority, it is far from clear that the pro se applicant would find such remedy acceptable.