COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.
 2-07-108-CR

       
2-07-109-CR

         2-07-110-CR

 

 

JONATHAN PRICE LARSEN, II                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

FROM THE 415TH DISTRICT
COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In three points, Jonathan Price Larsen, II
appeals his convictions and sentences for intoxication assault, for failure to
stop and render aid, and for evading arrest or detention with a vehicle.  We affirm.  


 








I. Factual and Procedural Background

On March 16, 2006, Larsen had a dispute over a
movie ticket with the assistant manager of a movie theater in Hudson Oaks,
Texas.  The assistant manager called the
Hudson Oaks Police Department (HOPD), and, according to her testimony, when
HOPD officers approached Larsen=s
vehicle, Larsen Apulled out and took off.@[2]

The HOPD officers activated their vehicles= lights
and sirens and chased Larsen=s
vehicle as he traveled on I-20 toward Weatherford at around 100 miles per
hour.  Still following Larsen, the HOPD
officers exited I-20 but then lost sight of Larsen=s
vehicle.  When they reached the
intersection of Bankhead Road and U.S. Highway 180, they found a severely damaged
Weatherford police vehicle and Larsen=s
smoking vehicle.








Weatherford Police Officer Gregory Stewart had
been dispatched to lay down Aspike
strips@ in an
attempt to end the car chase, and Larsen=s
vehicle, a heavy pickup truck, had collided with Officer Stewart=s
vehicle in the intersection, slamming into the driver=s side
door.  Officer Stewart suffered two
pelvic fractures, a bruised spinal cord, a severe concussion, and nerve damage,
as well as cuts, scrapes, and pieces of glass embedded in his scalp, all
resulting in a permanent impairment rating of twenty-five percent.

Before the HOPD officers arrived, Larsen fled the
scene on foot without giving aid to Officer Stewart.  Shortly thereafter, Weatherford police
located Larsen, who was hiding in the back of a pickup truck at a local car
dealership, and arrested him.  Lab
analyses of two blood samples taken from Larsen that night revealed blood
alcohol concentrations of .10 and .11.[3]

Larsen was indicted for intoxication assault,
failure to stop and render aid (FSRA), and evading arrest or detention with a
vehicle.  On January 25, 2007, he pleaded
guilty to all three offenses and elected to have a jury assess punishment. 








The trial court set the jury trial for February
26, 2007.  Larsen filed motions for
continuance in all three causes on February 22, urging two grounds: (1) he
needed additional time to have a second meeting with his retained mitigation
expert before the expert testified at trial, and (2) he needed additional time
to prepare for some of the State=s
witnesses, identified Awithin the last week that it
intends to call to testify at the trial in this matter.@  The trial court denied Larsen=s
motions after a hearing on February 23. 
Voir dire began on February 26, and Larsen=s
punishment trial began on February 27.

During the punishment trial, Officer Stewart and
others testified about the events of March 16, 2006, and the State presented
evidence of Larsen=s criminal history, extraneous
offenses, and other bad acts.[4]  Larsen, testifying on his own behalf,
admitted that on the day that his vehicle collided with Officer Stewart=s
vehicle, he had consumed Afive or six [c]rown and cokes@ and a
six-pack of beer on the way home from work. 
When asked by the State whether he was Ataking
responsibility for the evading and failure to stop and render aid and getting
drunk and nearly killing the officer,@ Larsen
replied, AYes, sir, that is correct.@

During his direct testimony, Larsen admitted to
his criminal history, extraneous offenses, and other bad acts, and offered as
explanations his unstable family life, including watching his mother die in a
car accident and an uncle who sexually abused him, and alcohol abuse.  He called several friends and family members
as character witnesses and Dr. Emily A. Fallis, a forensic evaluation
psychologist, as his mitigation expert.








On March 2, before jury deliberations began,
Larsen filed motions for a mistrial in all three causes due to juror misconduct
and requested permission to take juror Catherine Boyd on voir dire to clarify a
note that she had sent to the trial court. 
The trial court denied Larsen=s voir
dire request and Larsen=s motions for mistrial, but it
allowed Larsen to read the questions he would have asked Boyd into the record
and included the juror questionnaires in the record.

The jury assessed Larsen=s
punishment at five years= confinement and a $5,000 fine
each for the intoxication assault and FSRA convictions, and two years=
confinement and a $500 fine in the evading arrest or detention with a vehicle
conviction.  The jury returned affirmative
findings on the use or exhibition of a deadly weapon in the intoxication
assault and evading arrest convictions, and the trial court entered judgment on
the verdicts.  Larsen now appeals,
complaining that he was entitled to a mistrial because of juror misconduct,
that he suffered Double Jeopardy violations because of multiple punishments,
and that his motions for continuance should have been granted.

II. Jury Misconduct

In his third point, Larsen claims that the trial
court erred by denying his motions for mistrial because of jury misconduct.

 

 








A. Standard of Review

We review a trial court=s ruling
on a motion for mistrial using an abuse‑of‑discretion standard of
review, viewing the evidence in the light most favorable to the trial court=s ruling
and upholding that ruling if it was within the zone of reasonable
disagreement.  Webb v. State, 232
S.W.3d 109, 112 (Tex. Crim. App. 2007). 
A trial court abuses its discretion in denying a motion for mistrial
only when no reasonable view of the record could support the trial court=s
ruling.  See id. 

To obtain a mistrial for juror misconduct, the
defendant must show that the juror withheld material information during voir
dire despite due diligence exercised by the defendant.  Franklin v. State, 138 S.W.3d 351, 355_56 (Tex. Crim. App.
2004).  With respect to oral questions
asked during voir dire, error occurs when Aa
prejudiced or biased juror is selected without fault or lack of diligence on
the part of defense counsel, such counsel acting in good faith on the juror=s
responses and having no knowledge of their inaccuracy.@  Gonzales v. State, 3 S.W.3d 915, 916_17 (Tex. Crim. App.
1999).  








Counsel must be diligent in eliciting pertinent
information from prospective jurors during voir dire in an effort to uncover
potential prejudice or bias, and, unless defense counsel asks questions
calculated to bring out information that might be said to indicate a juror=s
inability to be impartial, the purportedly material information which a juror
fails to disclose is not really Awithheld@ so as
to constitute misconduct which would warrant a reversal.  See id. at 917.  Counsel=s
questions must be specific, not broad.  Id.;
see also Webb, 232 S.W.3d at 113 (AThe jury
panel does not know the statutory challenges for cause and thus the prospective
jurors likely do not know what the parties are trying to determine during voir
dire.  It is counsel=s
responsibility to ask questions specific enough to elicit the answers they
require.@); Armstrong
v. State, 897 S.W.2d 361, 363_64 (Tex. Crim. App. 1995)
(holding that there was no error where counsel did not ask question that would
uncover juror=s close friendship with
prosecutor).

B. Analysis

Larsen=s juror
misconduct complaint was triggered by a note from juror Boyd to the trial court
before jury deliberations.  The note was
about Micah Thompson, the mother of Larsen=s
three-year-old daughter; it stated:

Judge: 

Micah was my next door neighbor for a year when she lived on Wandering
Lane in Weatherford, Tx.

  

We didn=t have an overly cordial
relationship because she kept anywhere from ten to 20 dogs in her back yard and
they barked constantly during the night.

 








I don=t remember [Larsen] but
he could have been introduced once. 
Other than this knowledge, it will not affect any decision I would have
in this case.

 

Larsen sought to take Boyd on voir dire about the note, and his
questions included how Boyd knew Micah, whether she had ever met Larsen,
whether Boyd=s boyfriend knew Micah and ever
had an a Aaltercation@ with
her,[5]
and whether, in light of the altercation between Micah and Boyd=s
boyfriend, Boyd felt that she could Aset
aside any bias or prejudice [she] might have toward Micah Thompson and sit
fairly in judgment on [Larsen][.]@[6]

We must review whether Larsen exercised due
diligence during voir dire to elicit information regarding Micah Thompson and
any conflicts involving her to determine whether he was entitled to a
mistrial.  See Franklin,
138 S.W.3d at 355_56.  








On February 26, during voir dire, the State
asked: AAnyone
know the defendant, [Larsen]?  Anybody
feel like you know the defendant in any way? 
Perhaps you have a business that he visits, you know the family.  Just anybody in any way feel like you know
the defendant, [Larsen]?@ 
When it was Larsen=s turn, his attorney stated the
following to the venirepanel:

With the questionnaire
that you filled outBand I want to thank you
for that because that=s made our jobs a lot
easierBand with the thorough job
that [the district attorney] has done, I think that my questioning of you is
going to be quite a bit briefer than his . . . . This is [Larsen].  He is the defendant. . . . And, again, does
anyone recognize [Larsen]?  Without going
into a lot of the evidence, [Larsen] is 26 years old, and he=s lived in this area for
roughly the past four or five, six years. 
Does anyoneCafter knowing that
information, does anyone recognize [Larsen]?

 

None of the potential jurors responded that they knew or recognized
Larsen. 








Micah Thompson was not mentioned until the
punishment trial began, on February 27, and then only in passing during Officer
Stewart=s
testimony.[7]  Her name was mentioned again on February 28
during Larsen=s direct testimony about his
minor daughter, who has his last name, and with regard to where he was going
the night he collided with Officer Stewart.[8]  Also that day, Max Thompson testified that he
knew Larsen because Micah was his daughter and that Larsen started dating her
four years before the trial.

On March 1, during Micah=s mother=s
testimony, she pointed out Micah in the courtroom at Larsen=s
attorney=s
request.  Boyd=s note
was dated the same day that Micah=s mother
pointed Micah out in the courtroom.

Based on the record, Larsen failed to show that
he exercised due diligence or that Boyd Awithheld@ any
information during voir dire.  See id.  Specifically, no one asked the potential
jurors if any knew Micah Thompson, formerly of 221 Wandering Lane, who was
Larsen=s
girlfriend and the mother of his child, or if they, or any of their friends or
family, had ever had any altercations with Micah Thompson or Larsen.  See Gonzales, 3 S.W.3d at 917; Whiting
v. State, 943 S.W.2d 102, 105 (Tex. App.CHouston
[1st Dist.] 1997, pet. ref=d)
(holding that juror did not give false information to attorneys during voir
dire where the record reflected that he did not realize that he knew the victim
until he saw the victim walk into the courtroom during trial).         








The cases upon which Larsen relies, Von
January v. State, 576 S.W.2d 43 (Tex. Crim. App. 1978), and Salazar v.
State, 562 S.W.2d 480 (Tex. Crim. App. 1978), are inapposite.  In Von January, defense counsel
specifically asked whether any of the prospective jurors knew AGeorge
Parker, Sr., George Parker, Jr., or George Parker, III (the deceased),@ and the
juror in question did not respond, even though he recognized George Parker Sr.
when he entered the courtroom with the jury panel and had known the Parkers
well for around thirty years.  576 S.W.2d
at 44.  In Salazar, the State
specifically asked, in an indecency with a child case involving a
Mexican-American defendant, whether any of the venire had ever been a witness
in a criminal case, and the juror in question indicated that he had not.  562 S.W.2d at 481, 483.  The juror later revealed to the court that he
had given false information during voir dire in that he had been a witness in a
criminal case five years before, when he was an eyewitness to a sexual assault
on his own daughter by a Mexican‑American male.  Id. at 481_82.  

In contrast, here, neither Larsen nor the State
asked any questions about, or even mentioned, Micah Thompson during voir
dire.  Although Larsen blames Boyd for Aher
failure to respond,@ he presented nothing to the
venire for Boyd to respond to. 
Therefore, the trial court did not abuse its discretion by denying his
motion for mistrial.  We overrule Larsen=s third
point. 








III. Double Jeopardy

In his second point, Larsen contends that his
convictions and punishments for the three offenses violate Double Jeopardy
protections under the Texas and federal constitutions.  Specifically, Larsen argues that Aall
three charges, convictions[,] and punishments occurred in the same criminal
episode and transaction.@ 
He claims that there was no causal break between the three offenses,
resulting in multiple punishments for the same act.

A. Standard of Review

The Double Jeopardy Clause of the United States
Constitution provides that no person shall be subjected to twice having life or
limb in jeopardy for the same offense. 
U.S. CONST. amend. V.  Generally, this
clause protects against multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165, 97
S. Ct. 2221, 2225 (1977); Ex parte Herron, 790 S.W.2d 623, 624 (Tex.
Crim. App. 1990) (op. on reh=g).  However, separate convictions for different
offenses arising from a single criminal transaction do not violate the
prohibition against double jeopardy.  See
Haight v. State, 137 S.W.3d 48, 51 (Tex. Crim. App. 2004).  








To determine whether both offenses are the same,
we must examine the elements of the applicable statutes to determine whether
each statute Arequires proof of an additional
fact which the other does not.@  Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182 (1932); see United States v. Dixon, 509
U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); Parrish v. State, 869
S.W.2d 352, 353B55 (Tex. Crim. App. 1994).  But in multiple punishments cases, the court
of criminal appeals has recognized that Blockburger is not the exclusive
test and requires a two-step analysis. 
The first step is to examine the proof necessary to establish the
statutory elements of each offense as alleged in the indictment.  Vineyard v. State, 958 S.W.2d 834, 836
(Tex. Crim. App. 1998).  The second step
requires an analysis of the legislative intent, i.e., whether it was the
legislature=s intent to impose multiple
punishments or only one.  Ervin v.
State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999); see also Ex parte
Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006).  A defendant suffers multiple punishments in
violation of the Double Jeopardy Clause only when he is convicted of more
offenses than the legislature intended.  Ervin,
991 S.W.2d at 807.  

B. Analysis








Larsen was convicted of intoxication assault,
FSRA, and evading arrest or detention with a vehicle offenses.  The elements of an evading arrest or
detention with a vehicle offense are that the person intentionally flees, using
a vehicle, from a person that he knows is a peace officer attempting to
lawfully arrest or detain him.  See
Tex. Penal Code Ann. '
38.04(a), (b)(1). The elements of an intoxication assault offense require that
a person, by accident or mistake, operate a motor vehicle in a public place
while intoxicated and cause serious bodily injury to another.  See id. ' 49.07.  The elements of a FSRA offense require that
the operator of a vehicle involved in an injury-accident intentionally or
knowingly fail to immediately stop or return to the accident scene and to
remain there until he complies with section 550.023 of the transportation
code.  See Tex. Transp. Code Ann. ' 550.021(a),
(c) (Vernon Supp. 2007).  Section 550.023
of the transportation code requires providing any person injured in the
accident with reasonable assistance.  Id.
' 550.023(3)
(Vernon 1999). 








FSRA and evading arrest with a vehicle do not
require intoxication; intoxication assault does not require the perpetrator to
stay and render reasonable assistance, or that the offender intentionally flee
from authority.  See State v. Marshall,
814 S.W.2d 789, 796_97 (Tex.
App.CDallas
1991, pet. ref=d); see also Ephraim v. State,
237 S.W.3d 438, 440_41 (Tex.
App.CTexarkana
2007, pet. ref=d) (holding that there was no
double jeopardy violation in convictions for Aunsafe
speed@ and Aintoxication
assault,@
although the offenses shared some common elements, because the unsafe speed
charge did not require proving bodily injury or driver intoxication, and the
intoxication assault charge did not require proving that the offender used more
excessive speed than was reasonable and prudent under the circumstances).  These are all separate and distinct offensesCthe only
common element of all three is that a motor vehicle must be involved.  See Blockburger, 284 U.S. at 304, 52
S. Ct. at 182; Vineyard, 958 S.W.2d at 836. 

According to Ervin, we must now review
whether the legislature intended multiple punishments.  Ervin set out a nonexclusive list,
which includes whether: (1) the offenses=
provisions are contained within the same statutory section, (2) the offenses
are phrased in the alternative, (3) the offenses are named similarly, (4) the
offenses have common punishment ranges, (5) the offenses have a common focus,
or Agravamen,@ and
whether that common focus tends to indicate a single instance of conduct, (6)
the elements that differ between the offenses can be considered the Asame@ under
an imputed theory of liability which would result in the offenses being considered
the same under Blockburger, and (7) any legislative history containing
an articulation of an intent to treat the offenses as the same or different for
Double Jeopardy purposes.  See 991
S.W.2d at 814.








With regard to evading arrest or detention, the
legislature has explicitly provided that A[a]
person who is subject to prosecution under both this section and another law
may be prosecuted under either or both this section and the other law.@  Tex.
Penal Code Ann. ' 38.04(d).  Therefore, as to the conviction and
punishment for evading arrest or detention with a vehicle, Larsen=s Double
Jeopardy protections were not violated.  See
id.








Applying Ervin to the other two offenses,
intoxication assault and FSRA are not contained within the same statutory
sections: intoxication assault is located in the penal code, under the chapter
entitled, AIntoxication and Alcoholic
Beverage Offenses,@ and FSRA is located in the
transportation code, under the chapter entitled AAccidents
and Accident Reports.@ 
They are not phrased in the alternative or similarly named, although
there is some overlap in their punishment ranges.[9]  The focus of the offenses differs, in that under
intoxication assault, an offender is punished for causing bodily injury
to another with his vehicle, regardless of intent, while the offender was
intoxicated.  In contrast, under FSRA, an
offender is punished for intentionally abandoning someone that he
injured with his vehicle, drunk or sober. 
And the elements that differ between these offenses cannot be considered
the Asame@ under
an imputed theory of liability.  See
Marshall, 814 S.W.2d at 797 (holding that the State was not barred by
double jeopardy from prosecuting the defendant for FSRA after obtaining a
conviction for DWI for the same event). 
Under Ervin, FSRA and intoxication assault do not constitute the
same offense.  See Ervin,  991 S.W.2d at 814; see also Villanueva v.
State, 227 S.W.3d 744, 753 (Tex. Crim. App. 2007) (Keller, P.J.,
dissenting) (AThe legislature has shown a
willingness to impose additional criminal liability for a person=s
failure to mitigate the results of his (or others=)
conduct.  Failure to render aid is a
stand‑alone offense, as is failure to report a felony and failure to stop
and render aid, to mention but a few examples. 
These statutes reflect the legislature=s effort
to encourage the amelioration of injury.@).  We conclude that Larsen=s Double
Jeopardy protections were not violated and we overrule Larsen=s second
point.

IV. Motions for Continuance

In his first point, Larsen argues that the trial
court erred by denying his motions for continuance.

A. Standard of Review








The denying of a motion for continuance is within
the sound discretion of the trial court. 
Renteria v. State, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006);  Heiselbetz v. State, 906 S.W.2d 500, 511B12 (Tex.
Crim App. 1995).  A defendant must show Aspecific
prejudice to his defense@ to establish that the trial
court abused its discretion by refusing to grant a continuance.  Renteria, 206 S.W.3d at 699; Heiselbetz,
906 S.W.2d at 511B12. Examples of specific
prejudice include unfair surprise, an inability to effectively cross-examine
the State=s witnesses, and the inability
to elicit crucial testimony from potential witnesses.  Janecka v. State, 937 S.W.2d 456, 468
(Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 (1997); Dotson v.
State,146 S.W.3d 285, 297 (Tex. App.CFort
Worth 2004, pet. ref=d).  

B. Analysis

Larsen argues that he established at the hearing 

his diligence, material
facts, that the requested continuance was through no fault of his own part for
the delay, that the motion was not made for delay, as well as the fact that the
late disclosures by the State precluded his being ready for trial because of
the absence of a material witness, and of course: prejudice from the denial of
the requested continuance.

 

He contends that A[b]y
denying the requested continuance herein the trial court denied [Larsen] the
ability to adequately prepare his case as to punishment, the only contested
matter before the Court and the jury,@ and
because he received confinement instead of community supervision, he suffered
harm.








At the continuance hearing, Larsen did not
dispute the State=s argument that he had caused
his own delay by failing to show up at previously scheduled meetings with his
expert.[10]  Furthermore, although Larsen contended during
the motion hearing that he needed additional meetings with Dr. Fallis because A[t]here
has to be some testing scored in order for her to be prepared to testify[,]@ the
record reflects that Dr. Fallis was able to complete the test scoring in time
to testify, and that she felt she had enough time to evaluate Larsen for valid
results.[11]  Therefore, Larsen has failed to show any
specific prejudice or harm with regard to the denial of his motions for
continuance as to the expert witness.  See
Janecka, 937 S.W.2d at 468.








As to Larsen=s notice
argument, Larsen claims that the trial court erred by denying his motions
because he needed Ato investigate with respect to 2
witnesses substituted for those he was put on notice by the State would testify
only the week before the trial.@  Yet Larsen never identified which witnesses
he complained of, either in his motions or at the hearing.  Instead, he merely complained that Athe
[S]tate has provided us with additional information about witnesses in this
case within the last week with regard to prior bad acts.  And, additionally, we need more time to
prepare for those witnesses at the time of trial.@  In his motion, he added that he needed the
additional time Ato prepare cross-examination of
these witnesses.@

At the hearing, Larsen did not contradict the
State=s
assertion that there was only one new witness, Officer Scott Bird.  The State contended that Officer Bird was one
of two officers in a Wal-Mart theft incident and that the arrest record
produced earlier by the State to Larsen listed both officers; Officer Bird was
the officer who had written the report included in the arrest record.[12]     During the punishment trial, Officer Bird
testified to the same facts listed in the report; Larsen thanked the officer
for his testimony but did not cross-examine him.  Larsen testified to the same facts during his
direct examination, admitting that he had committed the offense by switching
the price tag from an expensive item, a pair of boots, to Aa
lesser-price tagged item.@








In his brief to this court, Larsen has failed
both to identify any specific witness or to explain how he was specifically
prejudiced by the trial court=s denial
of his motions for continuance with regard to any specific witness.  See Heiselbetz, 906 S.W.2d at 511B12
(requiring establishment of Aspecific
prejudice@ from a trial court=s
failure to continue the trial); see also Tex. R. App. P. 38.1(h) (requiring that a brief Acontain
a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record@). 

Because Dr. Fallis was able to provide the
testimony Larsen hired her to provide, and because Larsen opted not to
cross-examine Officer Bird and  testified
to the same facts as Officer Bird, Larsen has failed to show that he was
actually prejudiced by the denial of his motions for continuance.  See Heiselbetz, 906 S.W.2d
at  511B12; Dotson,
146 S.W.3d at 297.  Therefore, the denial
of his motions did not constitute an abuse of discretion.  We overrule Larsen=s first
point.

V. Conclusion

Having overruled all of Larsen=s
points, we affirm the judgments of the trial court.                                                 

PER CURIAM

PANEL F:    MCCOY, J.; CAYCE, C.J.; and WALKER, J.     

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  June 26, 2008











[1]See Tex. R. App. P. 47.4.





[2]Larsen testified that he
never saw the HOPD officers at the movie theater but that, after he left, one
of his friends called him and told him Athat the cops had just pulled out and that they
were coming to get [him].@





[3]A blood alcohol
concentration of .08 or more is legal intoxication.  See Tex.
Penal Code Ann. ' 49.01(2)(B) (Vernon
2003).





[4]These included writing
hot checks, stealing a wallet and fraudulently using a credit card from that
wallet to get his eyebrows waxed, starting a fire in a jail cell after a prior
arrest, other theft incidents, and driving while intoxicated.





[5]Larsen described the
altercation as a business deal between Micah and Boyd=s boyfriend, in which the
boyfriend ended up owing Micah $200 and let Micah=s dogs out of the
backyard on several occasions.  When
Micah attempted to kick the boyfriend=s door in, the boyfriend called the police, who
ordered both parties to stay off of each other=s property.





[6]Larsen also asserted that
Micah would testify that Micah and Boyd got along well, but that Boyd did not
like Larsen and that Boyd and Micah talked approximately once per month for one
year and discussed Larsen=s failure to pay child
support or to visit his daughter.  Larsen
also claimed that Micah would testify that Athere were several instances whereCthat the juror was very
upset about the dogs that was [sic] at the house where Micah . . . lived; that
the juror actually knew [Larsen] before she knew Micah . . . ; that Micah . . .
met the juror and her boyfriend through [Larsen].@





[7]Larsen=s attorney asked Officer
Stewart whether he ever told Micah that he did not feel Larsen should have
criminal charges pursued against him. 
Officer Stewart said that he did not.





[8]AI was going to 221
Wandering Lane . . . . it was a residence that Micah Thompson and I used to
share.@  Micah had sold that house, but Larsen
testified that he did not remember that and that he was heading for the house A[b]ecause [he] was scared
and [he] wanted to go to a place that [he] felt safe.@  On her juror questionnaire, Boyd revealed
that she lived at 229 Wandering Lane.





[9]Intoxication assault here
was a third degree felony, involving a punishment range from two to ten years= confinement and a fine
not to exceed $10,000; FSRA=s punishment range provides for confinement of
one to five years and a fine not to exceed $5,000.  Tex.
Penal Code Ann. '' 12.34, 49.07(c); Tex. Transp. Code Ann. ' 550.021(c)(2).





[10]At trial, Dr. Fallis
testified that Larsen missed at least two appointments with her.





[11]In response to the
question by Larsen=s attorney with regard to
whether she had enough time to evaluate Larsen, Dr. Fallis stated, AYes.  I feel confident about the things that are in
my report.@





[12]The record does not
contain any witness lists; however, it does contain the State=s subpoena
applications.  The State filed a subpoena
application for Officer Bird on February 22, at 1:30 p.m.  Larsen filed his motions for continuance at
3:15 p.m. that day.  To the extent that
Larsen=s complaint concerns
Joyce Ho and Raymond Waller, persons named in the State=s subpoena applications
filed February 14, eight days earlier, neither testified at trial.  Therefore, no prejudice was shown.