# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00617-CR

**Nathaniel Paul Fox, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-091, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found Nathaniel Paul Fox guilty of murder and aggravated assault of a family or household member with a deadly weapon. The jury assessed a sentence of 60 years in prison for each offense, with the sentences ordered to run concurrently. Appellant complains that his counsel provided ineffective assistance and that the two sentences violate the constitutional prohibition of double jeopardy. Because of the double-jeopardy violation, we will vacate the conviction for aggravated assault and affirm the remainder of the judgment.

## BACKGROUND

Witnesses testified that appellant and Melissa Eason, his victim, had a long-term, volatile relationship. Appellant had previously been arrested for violating a court order meant to protect Eason from him, and appellant testified that Eason had pending assault charges. New Braunfels Police Department officer Derrick Bobo testified that he spoke with Eason after a report of an altercation in the early hours of November 1, 2012. Bobo testified that Eason said that

Fox "had told her that if she ever left him . . . he would kill her, and that she didn't feel like she'd be alive past February and that Nathan Fox had a shotgun on lay-away." Eason's sister testified that Eason said on December 31, 2012 that she planned to leave appellant because she feared that she would "wake up dead one day" if she did not. Jessica Villarreal testified that Eason spent the night with her on December 31, 2012, and was apprehensive the next morning about what appellant might do if he was drunk when she returned home.

Appellant testified that, on the morning of January 1, 2013, Eason entered their apartment yelling and throwing and breaking things. He said that the noise woke him, then she punched him in the face. Appellant testified that Eason was taller and heavier than he and was unpredictable and violent when intoxicated. He said he wanted to leave, but Eason kept hitting him. Worried about his safety, he testified, he then "choked [Eason] out" to unconsciousness but not to death, leaving her dressed on the bed. He denied intending to kill her or crushing her throat. Appellant testified that he returned the next day and found Eason dead on the floor with her pants down. He checked her pulse, found none, and left—returning to lock the door. He testified that, after contemplating suicide, he turned himself in two days later.

On cross-examination, appellant testified that he had trained as a Marine and a mixed-martial arts fighter, but said he had never killed anyone with his hands. He also testified that he spoke on the phone while in jail and said that he would seriously injure any inmate who tried to fight him. He testified that he boasted in order to seem tough to other inmates within earshot.

The medical examiner testified that the cause of Eason's death was homicide by asphyxiation caused by strangulation. He testified that Eason tested positive for marijuana use and had a blood-alcohol content of .099, and that her vitreous fluid indicated that she had been more intoxicated in the immediately preceding hours.

2

## DISCUSSION

Appellant claims that his trial counsel was ineffective and that his punishment violated double-jeopardy principles.

### Appellant has not shown his counsel was ineffective.

An ineffective assistance of counsel claim requires a defendant to prove by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Ineffective-assistance claims turn on the facts and circumstances of each particular case, *Johnson v. State*, 691 S.W.2d 619, 626 (Tex. Crim. App. 1984), and must be firmly founded in the record, *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013). A single instance of counsel's error can rise to the level of deficient performance. *Id.* A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. *Strickland*, 466 U.S. at 696.

Appellant contends that his trial counsel was ineffective for failing to object or request a limiting instruction regarding appellant's testimony on cross-examination about a pretrial telephone conversation he had from jail with his sister during which he threatened to harm fellow inmates. The State contends that his trial counsel was not ineffective as alleged because the evidence

was admissible to rebut defensive theories and counsel might have reasonably chosen not to call attention to the evidence.

We conclude that, even assuming (without deciding) that trial counsel should have objected to the testimony and that such failure made counsel's entire performance deficient, the record as a whole shows that the testimony did not prejudice the defense. The unchallenged evidence shows that appellant and Eason had a history of disagreements, that Eason feared for her life generally and on the day before she died, that appellant admitted choking appellant to unconsciousness, and that Eason died from asphyxiation due to strangulation, evidenced in part by damage to her throat that was not apparent externally. The only contested issue at trial was whether appellant caused her death. In this context, appellant's testimony during cross-examination that he later asserted on the phone that he would seriously injure other men at the jail did not prejudice appellant. Further, even if counsel should have objected to this evidence, the failure to do so did not render counsel's overall assistance ineffective.

**The aggravated-assault conviction violates double-jeopardy protections.**

Appellant asserts that the concurrent 60-year sentences for aggravated assault and murder violate protections against double jeopardy. *See* U.S. Const. amend. V. A double-jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). There are two ways to assess whether the Legislature intended to authorize separate punishments: (1) analyzing the elements of the offenses and (2) identifying the appropriate "unit of prosecution" for the offenses. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). We use an

"elements" analysis when the offenses in question come from different statutory sections and use a "units" analysis when the offenses are alternate means of committing the same statutory offense. *Id*. In this case, appellant complains of convictions stemming from the same title, but different statutory sections and chapters. *See* Tex. Penal Code §§ 19.02 (murder), 22.02 (aggravated assault).

In an "elements" analysis, the *Blockburger* test is the starting point. *Shelby v. State*, 448 S.W.3d 431, 436 (Tex. Crim. App. 2014) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Under *Blockburger*, two offenses are not the same if each requires proof of a fact that the other does not. *Id*. We use the cognate-pleadings approach to the *Blockburger* test. We examine the statutory elements in the abstract and compare the offenses as pleaded to determine if the pleadings have alleged the same "facts required." *Id.* (citing *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008)). But the *Blockburger* test is a rule of statutory construction and not the exclusive test for determining if two offenses are the same. *Id*. The ultimate question is whether the Legislature intended to allow the same conduct to be punished under both relevant statutes. *Id*.

The Texas Court of Criminal Appeals has provided a non-exclusive list of factors useful in discerning whether the Legislature intended to punish conduct under different statutes. *Id*. (citing *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)). Those factors are:

> (1) whether offenses are in the same statutory section; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus; (6) whether the common focus tends to indicate a single instance of conduct; (7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and (8) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

5

*Id.*  The *Shelby* court wrote that the factor concerning the "focus" or "gravamen" of a penal provision is the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred.  *Id.*  The sixth factor requires a court to consider the allowable unit of prosecution for the offenses when conducting an "elements" analysis.  *Id.*; *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015).

The offenses in this case are separate offenses under the *Blockburger* test because aggravated assault of a family or household member and murder each have an element that the other does not.  As charged, aggravated assault of a family member uniquely requires a sufficient showing that the victim was a member of the defendant's family, while murder uniquely requires proof of death.  *Compare* Tex. Penal Code § 19.02(b)(1) *with id.* § 22.02(b)(1).  This analysis gives rise to a rebuttable judicial presumption that the offenses are separate for double-jeopardy purposes.  *Benson*, 459 SW.3d at 72.

Other than the gravamen of the offenses, many of the *Ervin* factors are either neutral or weigh in favor of finding an intent for separate punishments in this case.  The offenses are codified in separate sections, are not phrased in the alternative, and are not named similarly.  The elements of the offenses that differ (family member, death) cannot be considered the same and we find no express legislative history articulating an intent to treat the offenses as the same or different for double-jeopardy purposes.  Because the aggravated assault charge included family violence and a deadly weapon, it was a first-degree felony and had the same punishment range as murder.  *See* Tex. Penal Code §§ 19.02(c) (murder offense level), 22.02(b)(1) (aggravated-assault offense level).

The offenses do have a common focus, and that common focus indicates a single instance of conduct.  The undisputed testimony is that appellant choked Eason and that strangulation caused Eason's death.  The State never alleged or argued that appellant caused Eason's death in any

6

way other than strangulation and never alleged or argued that appellant strangled her and killed her on separate occasions. The only theory of the case presented in the indictment, evidence, charge, and appeal is that appellant killed Eason by strangling her. The focus of the offenses as presented is identical, and that common focus indicates a single instance of conduct.

The "family violence" aspect of the aggravated assault is the only notable deviation from the focus of both offenses on the act of strangulation, but the court of criminal appeals has held that the victim's specially protected status does not indicate a legislative intent for separate punishments for identical conduct. *See Shelby*, 448 S.W.3d at 438-39. In *Shelby*, the intoxicated defendant drove his vehicle into a peace officer's vehicle, injuring the trooper who was seated in the vehicle that was struck. *Id*. at 434. The driver was convicted of aggravated assault with a deadly weapon against a public servant and intoxication assault. *Id*.; *see* Tex. Penal Code §§ 22.02(b)(2) (aggravated assault), 49.07 (intoxication assault). The offenses were separate under *Blockburger* because the aggravated assault had the unique elements of the victim's employment and the use of a deadly weapon, while the intoxication assault had the unique elements of intoxication and operation of a motor vehicle in a public place. *Id.* at 436-37. But the court of criminal appeals held that the focus of both offenses was the causation of bodily injury. *Id*. at 439. The court also held that the allowable unit of prosecution for an assaultive offense in Texas is each victim. *Id*. at 439. The court wrote, "This indicates that the Legislature did not intend for one instance of assaultive conduct against a single person to yield convictions for both aggravated assault with a deadly weapon against a public official and intoxication assault for injuring one person." *Id.* at 439-40. The court of criminal appeals held that the gravamen factor weighed heavily in favor of finding a legislative intent that there be one punishment for these two convictions and concluded that punishment for both offenses unconstitutionally placed Shelby in double jeopardy. *Id.* at 439.

7

Because the trooper's status in *Shelby* did not merit a separate punishment for the aggravated assault, we must conclude in this case that Eason's family-member status here does not support separate punishments for both assault and murder. As alleged and proven, the aggravated assault was committed in the process of the murder of the same victim. As in *Shelby*, the focus of both offenses was the same conduct resulting in the same injury to the same victim (albeit serious bodily injury in one offense and fatal injury in the other[1]). We conclude that the Legislature has not shown an intent that separate punishments be imposed for these convictions in these circumstances. We hold that under the facts of this case, the trial court violated the constitutional protections against double jeopardy by assessing separate punishments for these two convictions.

The appropriate remedy in this case is to affirm the conviction for the more "serious" offense and to vacate the other conviction. *Id.* at 440. Murder is the more serious offense. Because of the double-jeopardy violation, we vacate the conviction for aggravated assault of a family or household member with a deadly weapon and the related prison sentence, and otherwise affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed in part; Vacated in part

Filed: January 7, 2016

Do Not Publish

_____

[1] Death is a form of serious bodily injury. Tex. Penal Code § 1.07(a)(46); *Jackson v. State*, 992 S.W.2d 469, 475 n.6 (Tex. Crim. App. 1999).