IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 





NO. PD-1917-11



 



DAVID RAMOS, Appellant


v. 


 THE STATE OF TEXAS







ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW 
 

 FROM THE EIGHTH COURT OF APPEALS

 EL PASO COUNTY




 


 Meyers, J., delivered the opinion of the Court in which Price, Womack,
Johnson, Hervey, and Cochran, JJ., joined. Alcala, J., filed a concurring
opinion. Keller, P.J., filed a dissenting opinion. Keasler, J., dissented. 

 

O P I N I O N


 Appellant was indicted on one count of capital murder, one count of felony
murder, and one count of injury to a child involving the death of Danielle Ramos, a child
under six years old. The indictment and jury charge alleged that Appellant killed Danielle
in one of three ways: (1) by shaking, (2) by shaking and causing Danielle's head to strike
an object, or (3) by shaking and striking Danielle's head with an object. (1) The jury
convicted Appellant of the lesser-included offense of manslaughter and sentenced him to
ten years in prison. (2) Appellant appealed and argued that the evidence is legally
insufficient to support the jury's determination: "(1) that he acted 'recklessly;' or (2) that
'shaking' caused Danielle's death." (3) The court of appeals found Appellant's statement
that he threw Danielle into her crib out of frustration provided a rational basis from which
the jury could have found recklessness; that is, he consciously disregarded her safety. (4) 
The court of appeals affirmed the conviction of the trial court after concluding that the
testimony at trial regarding the nature of Danielle's head injuries also provided a rational
basis for the jury to conclude that Appellant's actions caused Danielle's death. (5) 
Appellant filed a petition for discretionary review, which we granted to determine
whether the court of appeals erred in holding that a hypothetically correct jury charge for
manslaughter did not require the State to prove the act or acts relied upon to constitute
recklessness. However, since this petition was granted, this Court issued an opinion on
Johnson v. State (6) and addressed a nearly identical issue. Therefore, we will analyze this
case in light of Johnson and focus on whether the notice requirement of Article 21.15 of
the Code of Criminal Procedure affects the determination of whether there was a material
variance between the pleading and proof in this case. We hold that the variance between
pleading and proof is immaterial in this case and affirm the decision of the court of
appeals. BACKGROUND 

Summary of Facts 

 At 9 p.m. on March 15, 2006, Danielle Ramos was admitted to the emergency
room unconscious and not breathing. She was pronounced dead less than fifteen minutes
later, and medical examiners ruled her death a homicide. Dr. Paul Shrode, the Chief
Medical Examiner for El Paso County, concluded that Danielle's death was the result of
an impact injury to her head. Appellant was interviewed soon after Danielle was
pronounced dead, however his statement at that time was inconsistent with the statement
he gave after being taken into police custody. Once in custody, he stated that he was
home taking care of three children when he woke to the sound of Danielle crying. He
became frustrated when he was unable to calm her and she continued to cry. He stated
that he did not know what to do, so he "[k]ind of like not intentionally threw her hard. 
Just threw her on her bassinet to see if she would stop crying." He discovered that she
was not breathing that afternoon, but did not alert his wife until they returned home after
dinner that evening. When asked by the detective why Appellant had not explained this
during their first interview, Appellant explained, "It was my fault. I wanted something
else. Something else." Appellant was charged with capital murder, felony murder, and
injury to a child. At trial, Dr. Shrode testified that some type of trauma to Danielle's head
caused her brain to bleed and swell. He found that it was more likely that her head was in
motion when it struck an object than it was that an object struck her head when her head
was stationary. He also testified that shaking, coupled with an impact, was consistent
with the injuries that caused Danielle's death. This was the only evidence indicating that
Appellant shook Danielle or that shaking Danielle caused her death. However, there was
substantial evidence that Appellant threw Danielle into her metal-framed bassinet. 
Appellant was found guilty of manslaughter, an option that was submitted to the jury as a
lesser-included offense of the charged capital murder. Appellant appealed and argued
that the evidence was insufficient to prove that shaking caused Danielle's death. 
However, the court of appeals held that the hypothetically correct jury charge for
manslaughter "would ask whether Appellant recklessly caused the death of Danielle
Ramos," and would not include the manner and means alleged in the indictment. (7) 

Appellant's Argument 

 Appellant argues that the State failed to prove that Appellant caused Danielle's
death by shaking her as alleged in the indictment and therefore did not meet the notice 
requirement of Article 21.15 of the Code of Criminal Procedure. Appellant contends that
under Article 21.15, a hypothetically correct jury charge for manslaughter should have
included the act or acts relied upon to constitute recklessness and that the court of appeals
ignored the acts alleged when conducting its sufficiency review. Appellant argues that
there is no evidence that shaking caused Danielle's death. 

State's Argument 

 The State argues that the variance in pleading and proof is immaterial. First, in
result-of-conduct offenses like manslaughter, where the unit of prosecution is death of the
victim, a variance in pleading and proof in the manner of the offense's commission is
immaterial. Second, the acts pled in the indictment were not acts constituting
recklessness since the indictment did not charge manslaughter. Therefore, the State
argues that the court of appeals did not err in its decision. ANALYSIS 

 When determining the legal sufficiency of the evidence, we must (1) consider the
entire record in the light most favorable to the verdict and (2) determine whether, based
on the record, any rational trier of fact could have found the defendant guilty of all the
essential elements of the offense beyond a reasonable doubt. (8) 

 Additionally, the essential elements of the offense are defined by the
hypothetically correct jury charge for the case. (9) A hypothetically correct jury charge does
four things: (1) accurately sets out the law, (2) is authorized by the indictment, (3) does
not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's
theories of liability, and (4) adequately describes the particular offense for which the
defendant was tried. (10) However, we have determined that a hypothetically correct jury
charge does not have to include all of the charging instrument's allegations. (11) 

 As we explained in Johnson, there are two ways a variance can occur in pleading
and proof: 

 First, a variance can involve the statutory language that defines the offense. 
This can happen when a statute specifies alternate methods by which an
offense could be committed, the charging instrument pleads one of those
alternate methods, but the State proves, instead, an unpled method. For
example, the retaliation statute makes it a crime to threaten a "witness" or
"informant." The first type of variance occurs if the State pleads only
"witness" in the charging instrument and proves only the unpled element of
"informant" at trial. Second, a variance can involve a non-statutory
allegation that is descriptive of the offense in some way. For example, the
charging instrument pleads "Mary" as the victim, but the State proves
"John" at trial. Or the charging instrument pleads the offense was
committed with a knife, but the State proves at trial that a baseball bat was
used. (12) 


 The variance in Johnson was of the second type, a non-statutory allegation, which
is precisely the same kind of variance that is at issue in this case. In Johnson, the relevant
count of aggravated assault charged that the appellant intentionally or knowingly caused
serious bodily injury by hitting the victim with his hand or by twisting her arm with his
hand. However, the victim testified that appellant threw her against a wall, which caused
her serious bodily injury. We held that the variance involved a non-statutory type of
allegation that does not help define the allowable unit of prosecution for this result-of-conduct crime, and therefore, the variance did not render the evidence insufficient and is
immaterial. 

 In this case, the indictment alleged, and the charge required the jury to decide
whether, Appellant caused the victim's death by shaking her but testimony indicated that
he caused an object to strike her head, resulting in her death. Appellant argues that
because Appellant was convicted of manslaughter, Section 21.15 of the Code of Criminal
Procedure applies, the State is required to plead the acts relied upon to constitute
recklessness. Section 21.15 states: 

 Whenever recklessness or criminal negligence enters into or is a part or
element of any offense, or it is charged that the accused acted recklessly or
with criminal negligence in the commission of an offense, the complaint,
information, or indictment in order to be sufficient in any such case must
allege, with reasonable certainty, the act or acts relied upon to constitute
recklessness or criminal negligence, and in no event shall it be sufficient to
allege merely that the accused, in committing the offense, acted recklessly
or with criminal negligence. (13) 


 However, Section 21.15 does not apply in this situation because the indictment did
not include manslaughter, which was a lesser-included offense. Furthermore,
manslaughter is a "result of conduct" crime where the "focus" or gravamen is the "death
of the individual." (14)

 Applying the law to this case, we must determine whether any variance in pleading
and proof was material. As mentioned above, the purported variance in this case involves
a non-statutory allegation that is descriptive of the elements of the offense. Specifically,
the variance deals with the alleged method by which Appellant caused the death of the
victim-whether by shaking, shaking and striking her head against an object, or shaking
and striking her head with an object. While the State plead the above three acts as the
possible method of causing the victim's death, the evidence fails to prove definitively the
exact method of commission of manslaughter. However, as we held in Gollihar, the
pleading of unnecessary facts gives rise to an immaterial variance. (15)

 There are three relevant opinions that provide us with a valid framework of
analysis and guide us when determining whether a variance in pleading and proof is
material in regard to legal sufficiency. 

 First, in Johnson we focused on the offense's unit of prosecution by looking at the
gravamen of the offense. (16) As previously explained, the gravamen of murder is death of
the victim. (17) Therefore, the manner by which the murder is committed is irrelevant as
long as surrounding evidence shows beyond a reasonable doubt that Appellant was
reckless and caused the victim's death. (18) Applied to this situation, any variance in
pleading and proof is immaterial because the surrounding evidence and Appellant's
testimony show that Appellant (1) was reckless in his care of the victim and (2) caused
the victim's death. (19) In Johnson, we held that in "result of conduct" crimes such as
aggravated assault, the gravamen of the offense is the serious bodily injury, not what
caused the injury. (20) Therefore, a variance regarding a non-statutory allegation describing
the method of the offense of a result-of-conduct offense is immaterial. 

 Second, in Gollihar we clarified the effect of variances between indictment and
proof and focused on whether (1) there was sufficient notice to the defendant so he may
prepare an adequate defense at trial, and (2) there was no risk of double jeopardy. (21) The
facts of this case are similar to those in Gollihar. In Gollihar, the defendant was charged
with stealing a go-cart model 136202, however, at trial the defendant was proved to have
stolen go-cart model 136203. (22) We held that the variance in pleading and proof was
immaterial because the evidence and defendant's testimony showed that he was on
notice. (23) Furthermore, the facts surrounding the offense were so specific regarding the
theft of one go-cart that we determined that there was little risk that the defendant would
be re-prosecuted for the same offense. (24) Similarly in this situation, notwithstanding any
variance in pleading and proof regarding the precise method by which Appellant caused
the death of the victim, Appellant was still put on notice regarding the specific offense of
manslaughter because Appellant was charged with murder, and the events surrounding
the event were unique. Also, because this manslaughter concerns one deceased victim,
there is no risk that Appellant would later be prosecuted for the same offense. Therefore,
the variance is immaterial. 

 Finally, we will employ the cumulative-force analysis used in Lucio v. State, (25)
where if an uncertainty regarding legal sufficiency exists, "[e]ach fact need not point
directly and independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction." (26) In Lucio, we
determined that the evidence was legally sufficient to support a conviction for capital
murder, even though the defendant admitted only that she struck the two-year-old victim
at some time. (27) The evidence indicated that the defendant had the opportunity to inflict
the victim's fatal injuries, as she was the victim's primary care-giver, she told police that
she spanked or hit the victim several times, and that the victim's father and her older
children did not hit the victim. Based on this evidence the jury could infer that defendant
caused the victim's fatal injuries despite the fact that the evidence did not prove the
method of commission of the offense. The facts of Lucio almost mirror the facts of our
case-like in Lucio: (1) Appellant corroborated committing the result-of-conduct offense;
and (2) the evidence does not prove the specific method of commission of the offense. 
As in Lucio, the evidence in this case would lead a jury to infer beyond a reasonable
doubt that Appellant committed the offense of manslaughter, and therefore the variance is
immaterial. 

Conclusion 

 Because (1) the gravamen of manslaughter is the death of the victim, and the
evidence shows beyond a reasonable doubt that Appellant caused the death of the victim,
(2) notice was adequately provided to Appellant, and there is no risk of double jeopardy,
and (3) the cumulative force of the evidence supports the jury's verdict that, beyond a
reasonable doubt, the Appellant caused the death of the victim, the variance in pleading
and proof is immaterial. We affirm the decision of the court of appeals. 

 Meyers, J. 

Delivered: June 26, 2013 

Publish 
1. Ramos v. State, No. 08-09-00279, 2011 WL 3715956, at *4 (Tex. App.-El Paso Aug. 24,
2011, pet. granted) (not designated for publication).
2. Id. at *3. 
3. Id. 
4. Id. at *4. 
5. Id. 
6. 364 S.W.3d 292 (Tex. Crim. App. 2012). 
7. Ramos, No. 08-09-00279, 2011 WL 3715956, at *4. 
8. Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); see also Jackson v.
Virginia, 443 US. 307, 319 (1979). 
9. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
10. Id. 
11. Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001). 
12. Johnson, 364 S.W.3d at 294. 
13. Tex. Code Crim. Proc. Ann. § 21.15 (West 2011). 
14. Ervin v. State, 991 S.W.2d 804 (Tex. Crim. App. 1999). 
15. Gollihar, 46 S.W.3d at 257. 
16. Johnson, 364 S.W.3d at 295-96. 
17. Ervin, 991 S.W.2d at 804. 
18. Johnson, 364 S.W.3d at 295-96. 
19. There was ample evidence that could have led a jury to conclude that Appellant was
reckless in his actions. He admitted to throwing seven-month-old Danielle into her metal
bassinet "to see if she would stop crying." There was also evidence that Appellant was also
reckless in his inaction. When Appellant checked on Danielle, he believed she was in a "very
deep sleep" and was not breathing or responding. Although Appellant sensed that something was
wrong, he continued other activities, including taking his wife to dinner, before finally informing
others of his actions. 
20. Johnson, 364 S.W.3d at 295-96. 
21. Gollihar, 46 S.W.3d at 243. 
22. Id. at 244. 
23. Id. at 258. 
24. Id. 
25. 351 S.W.3d 878 (Tex. Crim. App. 2011). 
26. Id. at 878. 
27. Id.