

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00337-CR

**EX PARTE** Jennifer **RODRIGUEZ**

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 496800
Honorable Jason Wolff, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Karen Angelini, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:   February 15, 2017

AFFIRMED

In the underlying cause, Appellant Jennifer Rodriguez was charged by information with the offense of prostitution. She filed a pretrial application for writ of habeas corpus, arguing that the charge violated her right to be free from double jeopardy under the federal and Texas Constitutions. The trial court considered the merits of her application, but denied relief. Rodriguez then appealed. We affirm the trial court's order denying habeas relief.

## DOUBLE JEOPARDY

In her pretrial application for writ of habeas corpus, Rodriguez argued that her double jeopardy rights were being violated in the underlying cause because, in a separate case pending in San Antonio Municipal Court, she had already pled nolo contendere to the Class C offense of Loitering for the Purpose of Prostitution in violation of San Antonio Code of Ordinance § 21-25(c)

and had been given a deferred disposition order. Rodriguez argued that the criminal proceedings in municipal court arose out of the same transaction as the prostitution charge in the underlying case. The State does not dispute that the charge against Rodriguez in municipal court for violating the city ordinance of loitering for the purpose of prostitution and the charge of prostitution pending in the underlying cause arose from the same transaction. Instead, the State argues that the offenses are not the same for double jeopardy purposes.

*A. Multiple-Punishment Protection Under the Double Jeopardy Clause*

The Double Jeopardy Clause of the United States Constitution protects an accused from impermissible multiple punishments or successive prosecutions for the same offense after an acquittal or conviction. U.S. CONST. amend. V, cl. 2. "In the multiple-punishment context, the double-jeopardy clause prevents a court from prescribing greater punishment than the legislature intended." *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015). "How legislative intent is ascertained depends in part on whether the offenses at issue are codified in a single statute or in two distinct statutory provisions." *Id.* "The codification of offenses in two distinct statutory provisions is, by itself, some indication of a legislative intent to impose multiple punishments."[1] *Id.* "When two distinct statutory provisions are at issue, the offenses must be considered the same under both an 'elements' analysis and a 'units' analysis for a double-jeopardy violation to occur." *Id.*

---

[1] This case is unusual in that the laws at issue were enacted by different legislative bodies: one by the Texas Legislature and the other by the San Antonio City Council. The Double Jeopardy Clause of the Constitution does not bar successive prosecutions brought by different sovereigns, i.e. one prosecution brought by the state and another brought by the federal government. *Waller v. Florida*, 397 U.S. 387, 393-95 (1970). A municipality, however, is not a separate "sovereign" from the state for purposes of double jeopardy. *Id.* at 392-95. Because a municipality is not considered a "sovereign," a defendant cannot under the "dual sovereignty" doctrine be criminally prosecuted twice "for the same alleged crime" in a municipal court and then in a state court. *Id.*

### B. "Elements" Analysis

When, as here, two distinct statutory provisions are at issue, "the elements analysis . . . begins with the *Blockburger* same-elements test." *Ex parte Benson*, 459 S.W.3d at 72 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "That test asks 'whether each provision requires proof of a fact [that] the other does not." *Id.* (quoting *Blockburger*, 284 U.S. at 304). The application of the *Blockburger* same-elements test "is governed by the cognate-pleadings approach, which entails comparing the elements of the greater offense as pleaded to the statutory elements of the lesser offense." *Id.* "If the two offenses, so compared, have the same elements, then a judicial presumption arises that the offenses are the same for purposes of double jeopardy and that the defendant may not be punished for both, but that presumption can be rebutted by a clearly expressed legislative intent to impose multiple punishments." *Id.* (internal quotation omitted).

"Conversely, if the two offenses have different elements under the *Blockburger* test, the judicial presumption is that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed." *Id.* "This presumption can be rebutted by a showing, through various factors, that the legislature clearly intended only one punishment." *Id.* (internal quotation omitted). A non-exclusive list of these factors was set forth by the Texas Court of Criminal Appeals in *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999); *see Ex parte Benson*, 459 S.W.3d at 72 (explaining the factors set forth in *Ex parte Ervin* are applicable to determining whether the legislature clearly intended only one punishment). Those factors include the following: (1) whether the offenses are in the same statutory section or chapter; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus or gravamen; (6) whether the common focus tends to indicate a single instance of conduct;

(7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offense being considered the same under *Blockburger*; and (8) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes. *Ex parte Benson*, 459 S.W.3d at 72-73 (discussing *Ervin* factors).

### 1. *Loitering for the Purpose of Prostitution*

In municipal court, Rodriguez pled nolo contendere to having loitered for the purpose of prostitution in violation of section 21-25(c) of the San Antonio Code of Ordinances. Section 21-25(c)(1) provides that "[i]t is unlawful for any person to loiter in or near any street or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit prostitution." SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(1) (2016). Section 21-25(c)(3) further provides that "[n]o arrest shall be made for a violation of this section unless the arresting officer first affords such person an opportunity to explain such conduct, and no person shall be convicted of violating this section if it appears that the explanation given was true, and additionally did disclose a lawful purpose." *Id.* § 21-25(c)(3).

### 2. *Prostitution*

In the underlying cause, Rodriguez has been charged with prostitution in violation of section 43.02(a)(1) of the Texas Penal Code. Section 43.02(a)(1) provides that a "person commits an offense if, in return for receipt of a fee, the person knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct." TEX. PENAL CODE ANN. § 43.02(a)(1) (West Supp. 2016). The information specifically alleged that "on or about the 29th Day of July 2015, JENNIFER PATLAN [Rodriguez], hereinafter called defendant, did knowingly offer and agree to engage in

sexual conduct, namely: DEVIATE SEXUAL INTERCOURSE with Santos Sauceda, in return for a fee."

3. *Application of Same-Elements Test*

In applying the same-elements test, we conclude that the San Antonio ordinance (section 21-25(c)) and the prostitution statute as charged in this case (section 43.02(a)(1)) each require proof of a fact that the other does not. To commit the offense of loitering for prostitution in violation of the San Antonio ordinance, an individual must loiter *in a public place* in a manner "manifesting the purpose of inducing, enticing, soliciting or procuring another to commit prostitution." SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(1) (2016). However, the prostitution statute does not require the act to be in a public place. *See* TEX. PENAL CODE ANN. § 43.02(a)(1) (West Supp. 2016). Further, the San Antonio ordinance requires the act of loitering, which the prostitution statute does not. *Compare* TEX. PENAL CODE ANN. § 43.02(a)(1) (West Supp. 2016), *with* SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(1) (2016).[2] Additionally, while the prostitution statute requires an individual to knowingly offer to engage, agree to engage, or engage in sexual conduct, the San Antonio ordinance has no such requirement. *Compare* TEX. PENAL CODE ANN. § 43.02(a)(1) (West Supp. 2016), *with* SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(1) (2016). Therefore, because the San Antonio ordinance and the prostitution statute have different elements under the *Blockburger* same-elements test, "the judicial presumption is that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed." *Ex parte Benson*, 459 S.W.3d at 72.

Rodriguez argues that this presumption is rebutted when applying the factors set forth in *Ervin.* She points out that both the San Antonio ordinance and prostitution statute are found in

---

[2] Rodriguez admits in her brief that "[u]nder a strict reading of the cognate-pleadings approach, these two statutes have different elements that would allow the State to prosecute each without violating double jeopardy."

sections of their respective codes under the category of "prostitution." Rodriguez notes that the San Antonio ordinance even references the Texas Penal Code. *See* SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(4) (2016) ("Peace officers enforcing this section shall have the same amount of discretion as allowed under the Texas Penal Code."). Rodriguez also stresses that the ordinance and the statute have similar punishment ranges in the sense that the ordinance has a punishment range consistent with being a lesser-included offense of the statute. Rodriguez further argues the gravamen of both offenses is to criminalize and punish people engaged in prostitution. And, according to Rodriguez, while the ordinance punishes loitering, it only does so for individuals promoting prostitution. Thus, Rodriguez concludes the legislative intent was to penalize prostitution and not simply loitering.

Finally, Rodriguez argues that the ordinance is a lesser-included offense of the statute. According to Rodriguez, nothing in the Texas Penal Code requires an "offer" or "agreement" to be verbalized; instead, agreements in criminal law "are quite often tacit in nature and inferred from the circumstances." Rodriguez contends that "if someone intent on working as a prostitute sees a potential customer and steps out into the street to make a suggestive offer or to accept the customer's suggestive offer by means of gesture, provocative dress, or simply eye contact, the actor has triggered the gravamen of the offense in two separate statutes." Rodriguez argues "this common focus indicates the elements of the two offenses are the same under an 'imputed theory of reliability.'" Rodriguez concludes that the "language of the ordinance simply rephrases elements listed in the Texas Penal Code." Rodriguez argues that the terms "offer" and "entice" are "virtually interchangeable," as are the terms "procure" and "agree." According to Rodriguez, the "degrees to which they differ are matters of proof rather than alternative manner and means." Thus, Rodriguez contends that the municipal ordinance at issue "amounts to an attempt to commit prostitution" and is, in essence, a lesser-included offense.

While Rodriguez makes a persuasive argument, we cannot agree that application of the *Ervin* factors shows "the legislature clearly intended only one punishment." *Ex parte Benson*, 459 S.W.3d at 72. In particular, Rodriguez dismisses the requirement of the San Antonio ordinance that the conduct occur in a "place *open to the public*." SAN ANTONIO, TEX., CODE OF ORDINANCES ch. 21, art. I, § 21-25(c)(1) (2016) (emphasis added). We agree with Rodriguez that the language of both the San Antonio ordinance and the prostitution statute indicate the city council and state legislature intended to criminalize and punish people engaged in prostitution. However, the language of the San Antonio ordinance makes clear that the city council also intended *to protect the public* from being exposed to those engaged in prostitution. In contrast, the prostitution statute, as charged in this case, has no requirement that the conduct occur in public.[3] Given this distinction, we conclude that the San Antonio ordinance and the prostitution statute do not necessarily have "a common focus or gravamen" and there is not a "common focus" tending "to indicate a single instance of conduct." *Ex parte Benson*, 459 S.W.3d at 72. Thus, we cannot conclude that Rodriguez has shown that "the legislature clearly intended only one punishment." *Id.* Therefore, Rodriguez did not rebut the judicial presumption that the offenses are different for double-jeopardy purposes. *See id.* We hold Rodriguez's double jeopardy rights under the United States Constitution have not been violated by the current prosecution.

Rodriguez also argues that her double jeopardy rights afforded by article 1, section 14 of the Texas Constitution have been violated. According to Rodriguez, the *Ervin* court "suggest[ed]" that "the Texas Constitution requires a more liberal version of *Blockburger* than that required by the Fifth Amendment." We cannot, however, hold that the Texas Constitution requires more

---

[3] We noted that Rodriguez was not charged with section 43.02(a)(2), which provides that a person commits the offense of prostitution if, in return for receipt of a fee, the person knowingly "solicits another *in a public place* to engage with the actor in sexual conduct for hire." TEX. PENAL CODE ANN. § 43.02(a)(2) (West Supp. 2016) (emphasis added).

protection than the United States Constitution based on "suggest[ive]" language in *Ervin*. The court of criminal appeals in *Ervin* was clear that its holding pertained to the Fifth Amendment's protection against double jeopardy. *See Ervin*, 991 S.W.2d at 806, 817. While the *Ervin* court discussed how other jurisdictions had interpreted the Fifth Amendment, the court was clear that the issue presented was one "of federal constitutional dimension." *Id.* at 807. At no point did the *Ervin* court discuss double jeopardy rights afforded by the Texas Constitution. We therefore decline to hold that *Ervin* recognized an expansion of double-jeopardy rights under the Texas Constitution beyond those rights protected by the United States Constitution.

#### CONCLUSION

Under *Blockburger*'s same-elements test, the San Antonio ordinance and the prostitution statute at issue in this case each require proof of a fact that the other does not. Therefore, the judicial presumption is that the offenses are different for double-jeopardy purposes and that cumulative punishment may be imposed. This presumption can be rebutted by a showing, through various factors, that the legislature clearly intended only one punishment. In this case, however, Rodriguez has failed make a showing rebutting the presumption. Therefore, we hold that Rodriguez's double-jeopardy rights have not been violated. The trial court's order denying habeas relief is affirmed.

Karen Angelini, Justice

Publish